UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOWARD BERRY and DAVID BERRY, individually and on behalf of all others similarly situated, | Case No.:  2:15-cv-01299-RAJ |
| Plaintiffs, | **DEFENDANT FIRST TRANSIT, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| v. | |
| TRANSDEV SERVICES, INC. f/k/a VEOLIA TRANSPORTATION SERVICES, INC.; TRANSDEV NORTH AMERICA, INC., f/k/a VEOLIA SERVICES, INC.; and FIRST TRANSIT, INC., | **NOTING DATE: OCTOBER 28, 2016** |
| Defendants. | |

**FIRST TRANSIT, INC.'S MOTION TO DISMISS**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# TABLE OF CONTENTS

I.    INTRODUCTION   ...................................................................................................1

II.   STATEMENT OF FACTS..................................................................................... 2

III.   LEGAL AUTHORITY AND ARGUMENT ...................................................... 3

  A.   Standard For Motion To Dismiss Pursuant To FRCP 12(b)(6). .................. 3

  B.   Plaintiff's First Cause Of Action For Violations Of WAC 296-126-092 And RCW 49.12.020 (Rest Breaks Regulation) Fails To State A Claim................. 5

    1.   The Concept of "Joint Employment" Does Not Apply to Plaintiff's First Cause Of Action............................................................................................... 5

    2.   The Rest Break Regulation and the IWA Incorporate the Common-Law Definition of "Employ." ......................................................................................... 6

    3.   Plaintiffs Fail to State a Claim that First Transit Is Their Common-Law Employer...... 7

  C.   Plaintiff's Second And Third Causes Of Action For Violations Of RCW 49.46.090 and 49.46.130 (Washington Minimum Wage Act) Fail To State A Claim. ......................... 8

    1.   Plaintiffs' WMWA Claims Fail Because They Are Derivative of the Rest Breaks Regulation Claim. ............................................................................................. 9

    2.   Plaintiff Fails to State a Claim that First Transit Is a Joint Employer under the Economic Realities Test. ................................................................................... 9

      a.   FLSA Case Law upon Which Washington Courts Rely Establishes that First Transit Is Not a Joint Employer under the Alleged Facts. ................................... 9

      b.   The Federal DOL Administrator's 2016 Interpretation Establishes that First Transit Is Not a Joint Employer under the Alleged Facts. ........................................... 12

        (1)   Vertical Joint Employment Is Not Properly Alleged. ........................................ 13

        (2)   Horizontal Joint Employment Is Not Properly Alleged. ..................................... 13

  D.   Plaintiff's Fifth Cause Of Action For Breach Of Contract Against First Transit Fails To State A Claim. .................................................................................................. 14

    1.   First Transit's Contract Does Not Manifest Any Intent That First Transit Was Assuming a Direct Obligation to the Drivers. ................................................... 14

      a.   Section 4.5(A)(1) of the Contract .................................................... 14

      b.   Section 6.5(D)(1) of the Contract .................................................... 15

      c.   Section 6.5(D)(12) of the Contract ................................................... 15

    2.   Under Controlling Washington Supreme Court Precedent, the Drivers Are Not Intended Third-Party Beneficiaries of the Contract.................................................. 17

  E.   Plaintiff's Sixth Cause Of Action For Violations Of RCW 49.52.050 (Wage Rebate Act) Fails To State A Claim. .............................................................................. 18

IV.   CONCLUSION ................................................................................................ 19

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - i**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anfinson v. FedEx Ground Packaging Sys., Inc.,*
174 Wn.2d 851, 281 P.3d 289 (2012)..................................................................7

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)......................................4

*Astra USA, Inc. v. Santa Clara County,*
563 U.S. 110 (2011)..................................................................................17

*Becerra v. Expert Janitorial, LLC,*
181 Wn.2d 186, 332 P.3d 415 (2014)........................................................ passim

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................4

*Bonnette v. California Health and Welfare Agency,*
704 F.2d 1465 (9th Cir. 1983).............................................................10, 11

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of
Santa Clara,* 307 F.3d 1119 (9th Cir. 2002).....................................................4

*Caldas v. Affordable Granite & Stone, Inc.,*
820 N.W.2d 826 (Minn. 2012)...............................................................16

*D'Amato v. Wis. Gas Co.,*
760 F.2d 1474 (7th Cir. 1985)...............................................................17

*Del Guzzi Const. Co., Inc. v. Global Northwest, Ltd., Inc.,*
105 Wn.2d 878 (1986)................................................................17, 18

*Doty v. Dep't of Labor & Indus. of State,*
185 Wn. App. 1057 (2015), *review denied,* 184 Wn.2d 1002, 357 P.3d 666 (2015)...............7

*Ellerman v. Centerpoint Prepress, Inc.,*
143 Wn.2d 514, 22 P.3d 795 (2001).......................................................19

*Fischer v. City of Seattle,*
62 Wn.2d 800, 384 P.2d 852 (1963)........................................................8

FIRST TRANSIT, INC.'S MOTION TO DISMISS - ii
Case No. 2:15-cv-01299-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

*Hugee v. SJC Group, Inc.*,
  2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013)............................................................12

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (en banc) ...............................................................4

*McDonald Const. Co. v. Murray*,
  5 Wn. App. 68 (1971)...........................................................................................18

*McGinnis v. State*,
  152 Wn.2d 639, 99 P.3d 1240 (2004).....................................................................7

*Metzler Inv. V. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...............................................................................4

*Moreau v. Air France*,
  356 F.3d 942 (9th Cir. 2003) ...............................................................................11

*Peterson v. Hagan*,
  56 Wn.2d 48, 351 P.2d 127 (1960).........................................................................7

*Pichler v. Pac. Mech. Constructors*,
  1 Wn. App. 447 (1969) ...........................................................................................8

*Real v. Driscoll Strawberry Associates, Inc.*,
  603 F.2d 748 (9th Cir. 1979) ...............................................................................10

*State v. Pacheco*,
  125 Wn.2d 150, 882 P.2d 183 (1994)..................................................................6, 7

*Thomas v. Wilfac, Inc.*,
  65 Wn. App. 255 (1992) .......................................................................................18

*Torres-Lopez v. May*,
  111 F.3d 633 (9th Cir. 1997) ..........................................................................10, 11

*Velez v. New Haven Bus Service, Inc.*,
  35 F. Supp. 3d 219, 228-31 (D. Conn. 2014) ......................................................11

*Welden v. Skinner & Eddy Corp.*,
  103 Wash. 243, 174 P. 452 (1918).........................................................................8

*Wingert v. Yellow Freight Sys., Inc.*,
  146 Wn.2d 841, 50 P.3d 256 (2002)......................................................................8

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - iii**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

STATUTES

Fair Labor Standards Act, 29 U.S.C. §201 et. seq. (the "FLSA") ........................................ passim

Industrial Welfare Act (IWA), RCW Ch. 49.12 (the "IWA") ....................................................6,7

RCW 49.12.005(3)(b) and (4)..............................................................................................6

RCW 49.12.020 .....................................................................................................................5

RCW 49.12.320 .....................................................................................................................7

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 4

Washington GR 14.1.............................................................................................................7

Dept.. of Labor, Administrator's Interpretation No. 2016-1 (Jan. 20, 2016)...............................13

Restatement (Second) of Contracts........................................................................................17

WAC 296-125-015(2)...........................................................................................................7

WAC 296-126-001(1)...........................................................................................................6

WAC 296-126-092................................................................................................................5

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - iv**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# I.    INTRODUCTION

Plaintiffs' First Amended Complaint against newly named Defendant First Transit, Inc. ("First Transit") should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have not and cannot state any claim against First Transit.

As shown by the contracts whose contents are alleged in the First Amended Complaint (and which the Court can consider on a motion to dismiss for that reason), Plaintiffs are drivers employed by Transdev Services, Inc. f/k/a Veolia Transportation Services, Inc. and Transdev North America, Inc., f/k/a Veolia Services, Inc. ("Transdev") under Transdev's contract with King County to provide paratransit services for individuals with disabilities.  Plaintiffs originally filed this lawsuit only against their employer, Transdev, alleging that Transdev had failed to provide rest breaks in accordance with Washington law.  It is undisputed that First Transit serves a limited role in providing dispatch and scheduling services for the paratransit program.  First Transit has no responsibility for hiring, training, disciplining, firing, or paying the drivers.  Further, First Transit does not own any of the vehicles or facilities where the drivers work.  It was only when Plaintiffs failed to obtain free discovery from First Transit through a third-party subpoena (which requested extremely burdensome and expensive production of data that is owned by King County) that Plaintiffs filed their First Amended Complaint naming First Transit as a party.

To justify their claims, Plaintiffs misquote the contract between First Transit and King County, but the actual contract provisions reveal the truth of the matter.  In fact, First Transit had no duty to provide rest breaks or compensation for rest breaks to the drivers under Washington's rest breaks regulation or the Wage Rebate Act because it did not "employ" the drivers under the common-law definition of that term.  Likewise, First Transit had no duty under the Washington Minimum Wage Act because it was not a joint employer of the drivers under the economic realities test.  Finally, the contract between First Transit and King County manifests no intent that First Transit would assume a direct obligation to the drivers as is necessary for the drivers to

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1  be intended third-party beneficiaries of the contract.  For these reasons, Plaintiffs' claims against

2  First Transit must be dismissed in their entirety.

3  **II.    STATEMENT OF FACTS**

4          King County Metro manages a Paratransit Transportation program to provide van service

5  for members of the public with disabilities.  Declaration of Breanne Martell ("Martell Decl."),

6  Ex. 1 (Transdev Contract), § 4.2 (pp. 39-40).  King County contracted with the Transdev

7  Defendants to provide such van transportation services for disabled King County residents.

8  Plaintiffs' First Amended Class Action Complaint ("FAC"), §§ 3.3-3.4.  Under the contract,

9  Transdev was the "Service Provider" (S.P.) Contractor, with responsibility to "receive trip

10  schedules from the Control Center on a daily basis" and "send out vehicles with drivers to

11  provide the trips."  Martell Decl., Ex. 1, pp. 1-2 & § 4.1(B)(1) (p. 39).  At the same time, King

12  County contracted with First Transit, an independent business, to serve as the "Control Center"

13  (C.C.) Contractor and assist the Service Provider (Transdev) by acting as "the point of public

14  contact for ride screening, ride scheduling, and dispatching."  FAC, § 3.5; Martell Decl., Ex. 2

15  (First Transit Contract), pp. 1-2 & § 4.1(B)(1) (p. 43).

16          Plaintiffs have not alleged (and could not allege) that there is a contractual relationship

17  between Transdev and First Transit.  Rather, Transdev and First Transit separately contracted

18  with King County to provide different services to King County.  FAC, §§ 5.2-5.5; Martell Decl.,

19  Ex. 1-2.  Through the contracts, King County dictated how the services would be provided.

20  Martell Decl., Ex. 2, § 6 (pp. 74-99); Ex. 1, § 5 (pp. 50-69).  The party funding and ultimately

21  benefiting from the drivers' work was King County.  Martell Decl., Ex. 2, p. 2; Ex. 1, p. 2.

22          Plaintiffs' First Amended Complaint is predicated solely on alleged failures to provide

23  rest breaks to the drivers required by Washington regulation.  FAC, §§ 1.2-1.4, 4.3(b), (c) and

24  (m), 4.4, 5.21-5.31.  It is undisputed that the drivers were employed by Transdev.  Complaint, §§

25  3.1-4.1 [Dkt. No. 1, Ex. A].  Indeed, the contract between King County and Transdev specifies

26  that Transdev is responsible for: (1) hiring, training, and supervising drivers; (2) deploying

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1  drivers and vehicles on a daily basis; (3) developing a safety program to include driver

2  procedures and driver incentives; (4) ensuring that it has an adequate number of drivers available

3  to provide service; (5) determining work assignments for drivers; (6) ensuring that drivers meet

4  on-time performance standards; and (7) using and maintaining vehicles supplied by King

5  County.  Martell Decl., Ex. 1, §§ 5.1(A)(2) (p. 50); 5.1(E)(1)(a), (k) (p. 52); 5.1(G)(1), (3), (6)

6  (p. 54); 5.2(A) (pp. 56-57); 5.2(D) (pp. 57-58); 5.2(F) (pp. 58-59); 5.4 (p. 61).  The contract

7  specifically refers to the drivers as "S.P.-Contractor's drivers."  *Id.*, §§ 5.1(D)(4)-(5) (p. 51).

8  The contracts also make clear that First Transit did ***not*** employ the drivers.  Instead, the

9  "staff" of First Transit – those employees that First Transit was responsible for hiring, training,

10  and supervising – were "reservationists, schedulers, dispatchers, passenger service, quality

11  assurance, technical and other support staff to collect data and report."  Martell Decl., Ex. 2, §

12  6.1(A)(5)(a) (pp. 74-75); *see also id.*, § 6.3 (pp. 81-87).  Plaintiffs' specific allegations about the

13  relationship of First Transit to the drivers are limited to the following: (1) First Transit uses a

14  computer program called TRAPEZE to develop schedules and routes for the drivers; (2) First

15  Transit provides the daily manifest to drivers via a computer located in each driver's vehicle; (3)

16  First Transit maintains and monitors data regarding driver schedules, pickups, drop offs, vehicle

17  location, breaks, and other information; (4) First Transit uses an onboard computer system and

18  mobile radio to revise driver schedules on a daily basis; and (5) First Transit communicates with

19  drivers regarding scheduling changes and issues, including rest breaks.  FAC, §§ 5.7-5.9, 5.15,

20  5.17.  Plaintiffs have not made any allegations that First Transit paid the drivers, that First

21  Transit had any control over the wages paid to the drivers, or that the driver's work was done for

22  First Transit's benefit.  *See* FAC.

23  **III.  LEGAL AUTHORITY AND ARGUMENT**

24  **A.  Standard For Motion To Dismiss Pursuant To FRCP 12(b)(6).**

25  For the Complaint to survive this Rule 12(b)(6) motion, the claims must meet the

26  pleading standard established by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 3**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). These cases shifted the federal pleading standard from notice pleading to a heightened standard. A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of the plaintiff's factual allegations, but is "not required to indulge unwarranted inferences." *Metzler Inv. V. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008) (citation omitted). "[A] pleading offering only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In ruling on a Rule 12(b)(6) motion, a district court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting the motion into one for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Here, Plaintiffs have alleged contents of the Transdev and First Transit contracts in their First Amended Complaint, see FAC, §§ 5.2-5.5, and no party questions the authenticity of the documents. Therefore, the Court should consider the contracts in ruling on First Transit's motion to dismiss.

If the pleading "could not possibly be cured by the allegation of other facts," then the Court should dismiss it with prejudice and deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). Pursuant to this legal standard, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 4**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**B.** **Plaintiff's First Cause Of Action For Violations Of WAC 296-126-092 And RCW 49.12.020 (Rest Breaks Regulation) Fails To State A Claim.**

Plaintiffs' allegations in their First Claim for Relief depend on their assertion that First Transit employed the drivers and, as their employer, failed to provide rest breaks. As Plaintiffs recognize, the obligation to provide breaks applies only to "employers" of "employees." FAC, §§ 6.2-6.7. Yet, First Transit had no duty under the rest breaks regulation because First Transit did not "employ" the drivers under the common-law definition of that term.

**1.** **The Concept of "Joint Employment" Does Not Apply to Plaintiff's First Cause Of Action.**

Plaintiffs' First Amended Complaint is predicated solely on alleged failures to provide rest breaks to the drivers required by Washington regulation. FAC, §§ 1.2-1.4, 4.3(b), (c) and (m), 4.4, 5.21-5.31. It is undisputed that the drivers were employed by Transdev. Complaint, §§ 3.1-4.1 [Dkt. No. 1, Ex. A]; Martell Decl., Ex. 1, §§ 5.1-5.2 (pp. 50-59). In an effort to now also assert their rest breaks claim against First Transit, Plaintiffs seek to rely on a joint employment theory, alleging that while Transdev was the drivers' employer, First Transit was also their "joint" employer. FAC, §§ 5.6-5.14.

The joint employer theory is a creature of federal law, developed under the Fair Labor Standard Act ("FLSA"). The Washington Supreme Court has applied this federal theory to a particular Washington statute, the Washington Minimum Wage Act ("WMWA"), due to the WMWA having been patterned after the FLSA, and having incorporated a broad statutory definition for "employ" of "permitting to work," patterned after the broad definition of "employ" in the FLSA of to "suffer or permit to work." *Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 194-95, 332 P.3d 415 (2014). The *Becerra* court cautioned, however, that the joint employment theory it adopted does *not* apply to other employment obligations, stating: "The joint employment test we articulate today is designed to determine obligations under the minimum wage act and does not otherwise govern a worker's employment status or an employer's obligations." *Becerra*, 181 Wn.2d at 196 n.6.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 5**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**2.    The Rest Break Regulation and the IWA Incorporate the Common-Law Definition of "Employ."**

The rest break regulation on which Plaintiffs' claims are all based was *not* patterned after the FLSA, and does *not* incorporate the broad WMWA definition of employment as "permitting to work."  Rather, the rest breaks regulation applies only to the employment relationship as known at common law.  The rest breaks regulation is part of the Standards of Labor regulations, which were promulgated under the authority of the Industrial Welfare Act, RCW Ch. 49.12 (the "IWA"), and which define a covered employer by reference to the definition of employer in the IWA.  WAC 296-126-001(1) ("These rules apply to employers and employees in the state as defined in RCW 49.12.005 (3) and (4)").  The IWA defines an employer as a person or entity that "employs one or more employees."  RCW 49.12.005(3)(b).  The unadorned term "employs" should be given its common law meaning.  The courts "presume the Legislature intended undefined words to mean what they did at common law."  *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994).

Washington's current IWA had its genesis in the Legislature's establishment of an Industrial Welfare Commission through the Laws of 1913.  *See* 1973 2nd ex.s. c 16 § 1 (establishing definitions in RCW 49.12.005 and noting that the 1973 statute was amending chapter 174, Laws of 1913).  Chapter 174, Laws of 1913, from which the IWA is derived, made it "unlawful to *employ* women or minors in any industry or occupation within the State of Washington under conditions of labor detrimental to their health or morals," but did not define "employ."  *See* Laws of 1913, chapter 174, sect. 2.  The Legislature and the Department of Labor later defined "employ" in the IWA and Standards of Labor Regulations, with respect only to *minors,* as "to engage, suffer or permit to work," without providing any definition of "employ" with respect to adults.  *See* WAC 296-125-015(2); RCW 49.12.320; *Doty v. Dep't of Labor & Indus. of State*, 185 Wn. App. 1057, at *2 (2015) (unpublished), *review denied*, 184 Wn.2d 1002,

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 6**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

357 P.3d 666 (2015).[1]  If this definition of "employ" already applied to the IWA as a whole, then the addition of this definition with respect to minors would be superfluous.  Canons of statutory construction require that a statute should not be interpreted so as to render one part inoperative or meaningless.  *McGinnis v. State*, 152 Wn.2d 639, 645–46, 99 P.3d 1240, 1243 (2004) (citations omitted) (holding that the IWA did not apply to the State prior to amendments that were enacted to specifically add government employers to the definition of "employer").

Unlike the "employ" language in the IWA that applies to the employment of adults, which dates back to 1913, the "permitting to work" language in the WMWA was not adopted until 1959.  *Anfinson v. FedEx Ground Packaging Sys., Inc.*, 174 Wn.2d 851, 868, 281 P.3d 289 (2012); *Peterson v. Hagan*, 56 Wn.2d 48, 56, 351 P.2d 127 (1960).  As shown, that definition has not been incorporated into the IWA (or its rest break rules) with respect to the employment of adults.  Thus, the broader concept of employment as "permitting to work" that exists in the WMWA, based on the FLSA, does not apply to the adult rest break provisions promulgated under the IWA.  Rather, because "employ" is undefined in the IWA, its meaning must be determined by the common law.  *Pacheco*, 125 Wn.2d at 154.  The WMWA/FLSA joint employment theory was unknown at common law.  As the Washington Supreme Court has recognized, the joint employment theory is "far broader than that in common law" and encompasses working relationships that, prior to the FLSA, were "not deemed to fall within an employer-employee category."  *Becerra*, 181 Wn.2d at 195 (citations omitted).

### 3.    Plaintiffs Fail to State a Claim that First Transit Is Their Common-Law Employer.

Plaintiffs' Complaint does not allege that First Transit was the employer of the drivers under the common law, nor could it.  Under the common law, the primary employer of a worker remains the worker's sole employer despite permitting others to exercise substantial control over

---

[1] Effective September 1, 2016, Washington GR 14.1 permits citation to unpublished opinions by the Washington Court of Appeals issued on or after March 1, 2013.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 7**
**Case No.  2:15-cv-01299-RAJ**

the worker's performance.  For example, in *Welden v. Skinner & Eddy Corp.*, 103 Wash. 243, 247-48, 174 P. 452 (1918), a land owner hired an engineering firm to direct a construction project for it.  The engineering firm employed the workmen on the project and directed their work.  The court held the workers were employed by the owner and not by the engineering firm, because the engineering firm was "nothing more than employes [sic] and agents of" the owner.  Here, Plaintiffs' allegations confirm that First Transit has a limited responsibility of developing, recording, and communicating schedules and routes for the drivers.  FAC, §§ 5.7-5.9, 5.15, 5.17.  This role is even more limited than that of the engineering firm that the Washington Supreme Court deemed was not an employer in *Welden*.[2]

Because the facts alleged in the FAC establish that First Transit did not "employ" the drivers under the common-law definition, the rest breaks regulation imposed no duty on First Transit to provide rest breaks to the drivers.  And for that reason, First Transit is not subject to the private right of action that the Washington Supreme Court has implied to give employees the right to enforce that regulation directly.  *See Wingert v. Yellow Freight Sys., Inc.,* 146 Wn.2d 841, 849-50, 50 P.3d 256 (2002) (claim for damages for failure to provide rest breaks is an implied private right to enforce the rest breaks regulation).

**C.    Plaintiff's Second And Third Causes Of Action For Violations Of RCW 49.46.090 and 49.46.130 (Washington Minimum Wage Act) Fail To State A Claim.**

Plaintiffs' allegations in their Second and Third Claims for Relief depend on their assertion that First Transit jointly employed the drivers and, as their joint employer, failed to compensate drivers for missed rest breaks under the WMWA.  These claims must fail because

---

[2] The common law recognizes a "lent servant" doctrine, but Plaintiffs have not pled that doctrine, and the facts alleged in the Complaint show that no common-law "lent servant" arrangement was involved here.  The lent servant doctrine applies when a master lends a servant to another to provide services to the other "with respect to a particular transaction or piece of work."  *Fischer v. City of Seattle*, 62 Wn.2d 800, 805, 384 P.2d 852 (1963).  The lent servant doctrine does not apply where the primary employer retains the right to hire and fire and where the borrowing master does not exercise exclusive control over the servant.  *Pichler v. Pac. Mech. Constructors*, 1 Wn. App. 447, 451-52 (1969).  The Complaint and the parties' contracts make clear that Transdev was not lending its drivers to First Transit to work for First Transit.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

they are derivative of the First Claim for Relief. These claims also fail for the further reason that Plaintiffs have not (and cannot) allege sufficient facts to show that First Transit was their joint employer as defined by the FLSA and adopted by the Washington Supreme Court to determine the coverage of the WMWA.

> **1.     Plaintiffs' WMWA Claims Fail Because They Are Derivative of the Rest Breaks Regulation Claim.**

The WMWA claim fails because it is derivative of the rest breaks regulation claim. Without a valid rest breaks claim against First Transit, there is no claim of unpaid work against First Transit and therefore no possible WMWA claim against First Transit.

> **2.     Plaintiff Fails to State a Claim that First Transit Is a Joint Employer under the Economic Realities Test.**

In addition, First Transit is not a joint employer under the FLSA economic realities test that applies under the WMWA, and on which Plaintiffs' claim against First Transit is based. As already noted, the test for joint employment under the WMWA follows the FLSA economic realities test. *Becerra v. Expert Janitorial*, LLC, 181 Wn.2d 186, 196, 332 P.3d 415 (2014). First Transit is not a joint employer under the FLSA test, either under the federal case law or under the federal Department of Labor ("DOL") Administrator's recent Interpretation of the FLSA joint employment test.

> **a.     FLSA Case Law upon Which Washington Courts Rely Establishes that First Transit Is Not a Joint Employer under the Alleged Facts.**

In *Becerra*, the Washington Supreme Court adopted the FLSA economic realities test for determining whether a joint employment relationship exists. 181 Wn.2d at 195-96. Citing *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), and *Torres-Lopez v. May*, 111 F.3d 633, 642-44 (9th Cir. 1997), the Washington Supreme Court articulated a variety of "nonexclusive" factors that courts may consider in the analysis. 181 Wn.2d at 195-97. The regulatory factors are: (1) The nature and degree of control of the workers; (2) The degree of supervision, direct or indirect, of the work; (3) The power to

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 9**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

determine the pay rates or the methods of payment of the workers; (4) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) Preparation of payroll and the payment of wages. *Id.* at 196-97. The common-law factors are: (1) whether the work was a specialty job on the production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (3) whether the premises and equipment of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another; (5) whether the work was piecework and not work that required initiative, judgment, or foresight; (6) whether the employee had an opportunity for profit or loss depending upon the employee's managerial skill; (7) whether there was permanence in the working relationship; and (8) whether the service rendered is an integral part of the alleged employer's business. *Id.* at 197. Importantly, although *Becerra* adopted the *Bonnette* and *Torres-Lopez* factors as relevant in making the determination, the Court also explained that the determination "does not depend on such isolated factors but rather upon the circumstances of the whole activity." 181 Wn.2d at 198 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). The joint employment test is not one of "toting up a score," but rather involves the totality of the circumstances. *Id.* at 199.

Cases cited by the Washington Supreme Court in *Becerra* are readily distinguishable because the joint employment relationships in those cases were characterized by economic dependence. For example, in *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 756 (9th Cir. 1979), the Ninth Circuit found it "particularly significant[]" that the defendant may ultimately determine how much the laborers were paid and the growers appeared to be "completely dependent economically" on the defendant. In *Torres-Lopez v. May*, 111 F.3d 633, 642-44 (9th Cir. 1997), the Ninth Circuit held that a joint employment relationship existed where all but one factor weighed in favor of joint employment and the facts showed that the laborers were economically dependent on the farm. Similarly, in *Bonnette v. California Health and*

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 10**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1 | *Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), the Ninth Circuit found a joint

2 | employment relationship where state agencies "exercised considerable control over the nature

3 | and structure of the employment relationship" with in-home care workers and "had complete

4 | economic control over the relationship." By contrast, First Transit did not exercise any

5 | economic control over the drivers.

6 |     The present case is more like *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2003), where

7 | the Ninth Circuit held that an airline that contracted with several companies to provide ground-

8 | handling and catering services for its flights was not a joint employer. The Court reached this

9 | conclusion even though the airline scheduled the flights, which determined when the services

10 | were to be performed, but did not designate the employees who would report for work. The

11 | airline also provided specific directions about how the work was to be performed, checked the

12 | planes to monitor the work, reported concerns to the companies' supervisors, and provided some

13 | training to the employees. In addition, the employees performed a portion of their work on the

14 | airline's premises, and the airlines provided some equipment used in their work. However, the

15 | airline was not responsible for hiring, firing, disciplining, or paying the employees in question.

16 | *Id.* at 948-50. Applying the *Bonette* and *Torres-Lopez* factors, the Ninth Circuit found that "the

17 | supervision/control by Air France was minimal in contrast to numerous other factors which

18 | negate finding a joint employment relationship." *Id.* at 951-53.

19 |     Other courts have similarly declined to find a joint employer relationship when there are

20 | more indicia of employment than exist in the present case. *See, e.g., Velez v. New Haven Bus

21 | Service, Inc.*, 35 F. Supp. 3d 219, 228-31 (D. Conn. 2014) (holding that university was not joint

22 | employer of shuttle bus drivers even though it owned some of the buses, set the routes for the

23 | shuttle service, dispatched drivers, owned the computer dispatching system, and provided some

24 | training for the drivers); *Hugee v. SJC Group, Inc.*, 2013 WL 4399226, at *1-10 (S.D.N.Y. Aug.

25 | 14, 2013) (granting motion to dismiss defendant as joint employer where it required

26 | subcontractors' security guards to "report in" directly at the beginning and end of each shift,

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1  provided instructions and timesheets to be submitted directly to defendant, made inspection visits

2  and directed guards in performing their duties, communicated complaints directly to guards,

3  instructed subcontractor not to hire certain guards, and paid the subcontractor based on guards'

4  work hours).

5       When viewing the relationship of the parties as a whole, the factual allegations and the

6  contracts show that First Transit performed a single function with respect to the drivers:

7  determining routes and schedules *for the vans*. Even this responsibility did not extend to

8  determining which drivers would report to work on a given day, as Transdev was responsible for

9  "provid[ing] for daily deployment and return" of the drivers, determining "work assignments,"

10  and ensuring that "it has an adequate number of drivers to provide service." Contract, sect.

11  5.1(A)(2); 5.1(G)(1), (3). It was Transdev – not First Transit – that had responsibility for hiring,

12  training, supervising, and compensating the drivers, and maintaining the vehicles and facilities

13  where the drivers performed their work. Martell Decl., Ex. 1, §§ 5.1(A)(2) (p. 50); 5.1(D)(4)-(5)

14  (p. 51); 5.1(E)(1)(a), (k) (p. 52); 5.1(G)(1), (3), (6) (p. 54); 5.2(A) (pp. 56-57); 5.2(D) (pp. 57-

15  58); 5.2(F) (pp. 58-59); 5.4 (p. 61). *Compare* Ex. 2, § 6.3 (pp. 81-87) (staffing of control center),

16  *with* Ex. 1, § 5.2 (pp. 56-59) (staffing of service provider, including drivers). No specific facts

17  are alleged establishing that the drivers were economically dependent on First Transit, and the

18  contracts reveal that such facts do not exist.

19           **b.**     **The Federal DOL Administrator's 2016 Interpretation**
                    **Establishes that First Transit Is Not a Joint Employer under**

20                      **the Alleged Facts.**

21       The federal DOL Administrator's recent Interpretation of FLSA joint employment law

22  helpfully summarizes the analysis that is required here. Dept. of Labor, Administrator's

23  Interpretation No. 2016-1 (Jan. 20, 2016), *available at* https://www.dol.gov/whd/flsa/Joint_

24  Employment_AI.htm ("DOL 2016 Interpretation"). As the DOL has explained, the case law can

25  permit a finding of joint employment under the FLSA only in two ways -- vertical or horizontal

26  joint employment -- neither of which apply here.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 12**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

### (1) Vertical Joint Employment Is Not Properly Alleged.

Vertical joint employment is not properly alleged here because (a) First Transit is not alleged to have been the beneficiary of the driver's services, and (b) Plaintiffs allege no facts showing that the drivers were economically dependent on First Transit. Under the DOL analysis, the "core question" under the vertical analysis is "whether the employee is economically dependent on the potential joint employer who, via an arrangement with the intermediary employer, is benefitting from the work." DOL 2016 Interpretation, sect. II.B. The allegations of the Complaint demonstrate that the answer to this core question is "no" with respect to First Transit. Plaintiffs do not even attempt to allege that the driver's work was done for First Transit's benefit, and the contracts make plain that the party benefiting from the work was Transdev and ultimately King County, not First Transit. Martell Decl., Ex. 2, p. 2; Ex. 1, p. 2. As to economic dependence, Plaintiffs allege the conclusion that the drivers were "dependent upon" First Transit, FAC, § 5.14, but the Complaint does not support this conclusion with any facts. Further, the facts that are alleged and the contracts referenced therein show that First Transit was not the source, directly or indirectly, of any of the driver's wages. *See* Martell Decl., Ex. 1, p. 2 & § 5.2 (pp. 56-59). As such, the conclusory allegation that the drivers were economically dependent on First Transit fails the *Iqbal/Twombly* pleading standard. The contracts show that King County was the beneficiary and funder of the services, and that King County through contract dictated how the services would be provided. *See* Martell Decl., Ex. 2, p. 2 & § 6 (pp. 74-99); Ex. 1, p. 2 & § 5 (pp. 50-69). If any entity fits a joint employer analysis here, it is King County, not First Transit.

### (2) Horizontal Joint Employment Is Not Properly Alleged.

Horizontal joint employment is not properly alleged here because there is no allegation that First Transit is an employer of the drivers in its own right, or that First Transit and Transdev are commonly owned or controlled. According to the DOL, the horizontal joint employment analysis "focuses on the relationship of [two] employers to each other." DOL 2016

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Interpretation, sect. II.A.  Here the Complaint, together with the contracts, shows that First Transit did not directly employ the drivers; that First Transit and Transdev are independent businesses; and that First Transit and Transdev do not even have a contractual relationship between them (they each independently contracted to provide services to King County).  FAC, §§ 3.3, 3.4, 3.5, 5.2, 5.4; Martell Decl., Ex. 2, p. 1 & § 6.3 (pp. 81-87); Ex. 1, p. 1 & § 5.2 (pp. 56-59).

### D. Plaintiff's Fifth Cause Of Action For Breach Of Contract Against First Transit Fails To State A Claim.[3]

Plaintiffs' allegations in their Fifth Claim for Relief fail because First Transit did not undertake an intended third-party beneficiary contractual obligation running directly to the drivers.  Instead, the drivers are merely incidental beneficiaries of the contract and cannot bring a claim for breach of contract against First Transit.

### 1. First Transit's Contract Does Not Manifest Any Intent That First Transit Was Assuming a Direct Obligation to the Drivers.

First Transit's contract with King County includes no language that can be construed as having been intended to give the drivers a direct right of suit for breach of the contract.  It is noteworthy that Plaintiffs felt compelled to intentionally misquote these contractual terms, twisting their evident meaning, in their efforts to justify a claim against First Transit.  *See* FAC, §§ 5.4-5.5 and 10.3-10.5.

#### a. Section 4.5(A)(1) of the Contract

Plaintiffs allege: "The First Transit Contract provides that First Transit 'is responsible for ensuring compliance with all applicable laws and regulations, including any that require that *__[driver]__* employees be provided with periodic breaks during a work day.'"  FAC, § 10.3 (emphasis added).

The Contract actually provides:  "The Contractor is responsible for ensuring compliance with all applicable laws and regulations, including any that require that *__its__* employees be provided with periodic breaks during a work day."  Martell Decl., Ex. 2, § 4.5(A)(1) (p. 46) (emphasis added).

---

[3] Plaintiff's Fourth Cause of Action is asserted solely against the Transdev Defendants.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

First Transit cannot have breached the second clause (beginning with "including") in relation to Plaintiffs because, as shown above, the drivers were not First Transit's employees for purposes of the rest breaks regulation. Rather, as shown by the contracts, First Transit's employees were the reservationists, schedulers, dispatchers, passenger service staff, quality assurance staff, and technical and support staff. Martell Decl., Ex. 2, § 6.1(A)(5)(a) (pp. 74-75) and 6.3 (pp. 81-87). The initial clause, requiring that the contractors (Transdev and First Transit) ensure that their performance under the contract comply with **_all_** applicable laws, is not directed to the drivers and does not show an intent to empower the drivers or other third parties to sue for a breach of that contractual undertaking.

### b.     Section 6.5(D)(1) of the Contract

Plaintiffs allege: "The First Transit Contract further provides that First Transit 'shall **. . .** ensure that **. . .** drivers receive breaks and lunches.'" FAC, § 10.5 (emphasis added).

The Contract actually provides: "Additionally, the C.C.-Contractor [First Transit] shall provide non-reservation coverage from 5:00 p.m. to 8:00 a.m. to process ride inquires, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to ensure that **_its_** drivers receive breaks and lunches." Martell Decl., Ex. 2, § 6.5(D)(1) (p. 89) (emphasis added).

As already shown, First Transit did not employ the Plaintiff drivers, so First Transit cannot have breached the "and to ensure" clause in relation to Plaintiffs. There is also no allegation that First Transit breached the actual obligation imposed on First Transit by this sentence, which was to "provide non-reservation coverage from 5:00 p.m. to 8:00 a.m."

### c.     Section 6.5(D)(12) of the Contract

Plaintiffs allege: "The First Transit Contract further provides that First Transit shall work with Transdev 'to develop a plan to ensure driver breaks and lunches,' **_and '[t]_**his plan shall conform to applicable law.'" FAC, § 10.4 (emphasis added).

The Contract actually provides: "The C.C.-Contractor [First Transit] shall work with S.P.-Contractors [Transdev] to develop a plan to ensure driver breaks and lunches **_that shall have the least impact on the provision of service._** This plan shall conform to applicable law." Martell Decl., Ex. 2, § 6.5(D)(12) (p. 89) (emphasis added).

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 15**
**Case No.  2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

The first sentence obligated the contractors to ensure that driver breaks had the least impact on the provision of services. The Complaint does not allege a breach of that sentence for the reason that it required that driver breaks be minimized, not provided. The second sentence, stating that the breaks plan "shall conform to applicable law," is not an undertaking to provide rest breaks to drivers, but rather is merely an acknowledgement by King County that the obligation it was imposing on First Transit and Transdev to minimize the impact of driver breaks did not require the contractors to ignore Transdev's obligation to provide legally-required breaks to its employees. In the alternative, to the extent the second sentence is viewed as a contractual undertaking to provide breaks rather than (properly) as a mere limitation on the contractors' obligation to minimize breaks, the second sentence is merely another undertaking by the parties to execute their contractual obligations in a lawful fashion. This again does not show an intent to empower third parties to sue for a breach of that contractual undertaking.

A promise given by one contracting party to the other to comply with the law in its discharge of its contractual duties does not confer a right to sue on third parties. Such a promise in a contract does not create an intended third-party beneficiary. *See, e.g., Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826 (Minn. 2012) (holding that employees were not intended third-party beneficiaries of contract between City and their employer that required the employer to pay prevailing wages);[4] *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011) (holding that health care facilities were not intended third-party beneficiaries of pricing agreements between pharmaceutical manufacturers and the federal government); *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1479-80 (7th Cir. 1985) (holding that employee of a government contractor was not intended third-party beneficiary of affirmative-action clauses required by the Rehabilitation Act).

---

[4] Like Minnesota, Washington follows the Restatement (Second) of Contracts on intended third-party beneficiaries.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 16**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**2.** **Under Controlling Washington Supreme Court Precedent, the Drivers Are Not Intended Third-Party Beneficiaries of the Contract.**

Plaintiffs' third-party beneficiary contract claim is viable only if the contract shows that the parties intended that First Transit would assume a ***direct obligation*** to the drivers. "Creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Del Guzzi Const. Co., Inc. v. Global Northwest, Ltd., Inc.*, 105 Wn.2d 878, 886 (1986) (quotations and citations omitted). The Court must look to the terms of the contract to determine the intent of the parties. *Id.* at 887.

In *Del Guzzi*, the court found the plaintiff was not an intended third party beneficiary of contractual promises. The facts of that case are analogous to the situation presented here. Clallam County entered into a contract with an engineering firm (Kennedy) to plan and supervise a construction project. The County also entered into a contract with a construction company (Del Guzzi) to complete the construction. Del Guzzi entered into a contract with a minority subcontractor (Global), as required by its contract with the County, to complete a portion of the work. Del Guzzi later filed suit against Global because of costs it incurred in assisting Global to complete some of its work. Global counter-claimed for cost overruns, alleging that it was a third-party beneficiary of the County/Del Guzzi contract because the contract required minority participation in order to receive federal funding. Global also filed a third-party action against the County and Kennedy, alleging that they breached a contractual duty to provide suitable specifications and oversight for the project as required by their contract. *Id.* at 880-81. The Court held that Global was not an intended third-party beneficiary of either contract because the parties did not manifest an intent that the County or Kennedy would assume a direct obligation to Global. Instead, any benefits derived by Global from the contracts were incidental. *Id.* at 887.

Transdev (like Del Guzzi) contracted with the County to perform work. Transdev, in turn, hired drivers (similar to Global) to assist in performing the work. Transdev (like Del

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Guzzi) promised to comply with certain legal requirements, which (similar to minority participation) would provide an incidental benefit to the drivers (similar to Global). First Transit (like Kennedy) separately contracted with the County, to perform planning and monitoring aspects of the work, which included a promise to work with Transdev to develop a plan for driver breaks (similar to Kennedy's obligation to provide specifications). This plan also incidentally benefited the drivers (similar to Global). Just like *Del Guzzi*, there is nothing in the First Transit contract that manifests an intent to create a direct obligation to the drivers.

Other courts have reached the same conclusion under similar circumstances. *See, e.g., Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 263 (1992) (holding that patient was not third-party beneficiary of doctor's employment contract wherein he promised to "provide medical services with the highest degree of medical competency"); *McDonald Const. Co. v. Murray*, 5 Wn. App. 68, 70-71 (1971) (holding that tenant was not third-party beneficiary of contract between construction company and building owner wherein construction company promised to complete work within 75 calendar days).

Thus, based on controlling authority from the Washington Supreme Court and the intent manifested in the language of the contract, Plaintiffs are merely incidental – not intended – third-party beneficiaries of the contract between First Transit and King County.

**E.    Plaintiff's Sixth Cause Of Action For Violations Of RCW 49.52.050 (Wage Rebate Act) Fails To State A Claim.**

Plaintiffs' Sixth Cause of Action under the Wage Rebate Act (RCW 49.52) fails against First Transit because liability under that statute extends only to common law employers (the same analysis that applies to the rest break regulation claim, as discussed in Section III.B., *supra*), and to such employer's agents who control the payment of wages.

RCW 49.52.050 and .070 were enacted on March 17, 1939. Ch. 195, Laws of 1939. Although the FLSA had been enacted the previous year, the Washington legislature did not incorporate the broad FLSA "suffer or permit" language. Rather, it limited the coverage of

1    the statute to an "*employer* or officer, vice principal or agent *of any employer*." RCW 49.52.050,

2    .070 (emphasis added). The unadorned term "employer" in this statute should be given its

3    common-law meaning, the same as under the rest breaks regulation.

4        Further, the Washington Supreme Court has held that, because the purpose of this statute

5    is to prohibit the withholding of wages, a claim under this statute can be asserted only against a

6    person who exercises "some control over the payment of wages." *Ellerman v. Centerpoint*

7    *Prepress, Inc*., 143 Wn.2d 514, 522-23, 22 P.3d 795 (2001). There is no allegation in the

8    Complaint that First Transit exercised any control over the payment of wages. Under the

9    contract, First Transit had no control over whether Transdev paid additional wages to the

10   Transdev drivers if additional wages were due for missed meal breaks. *Compare* Martell Decl.,

11   Ex. 2, § 6.3 (pp. 81-87) (staffing of control center), *with* Ex. 1, § 5.2 (pp. 56-59) (staffing of

12   service provider, including drivers).

13       Plaintiffs have not alleged that First Transit was an "officer, vice principal or agent" of

14   the actual employer, Transdev, but any such allegation would be futile. This is because *Ellerman*

15   holds that this claim can be asserted against officers, vice principals and agents only if they

16   exercised control over the payment of wages. *Id*. As already shown, the Complaint does not

17   allege that First Transit had any control over the payment of wages.

18       An additional and independent reason that the Wage Rebate Act claim fails is because it

19   is derivative of the other claims that wages are owed. As already explained, those claims all fail

20   to state a claim upon which relief can be granted against First Transit.

21   **IV.    CONCLUSION**

22       For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed with

23   prejudice against First Transit.

24

25

26

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

October 4, 2016

s/ *Breanne Sheetz Martell*
Daniel L. Thieme, WSBA #12855
dthieme@littler.com
Breanne Sheetz Martell, WSBA #39632
bsmartell@littler.com
Vanessa B.K. Lee, WSBA #46547
vblee@littler.com
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
Phone:        206.623.3300
Fax:           206.447.6965

Attorneys for Defendant
FIRST TRANSIT, INC.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 20**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

## CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Ste. 3200, Seattle, WA 98101. On October 4, 2016, I

✘ **ELECTRONICALLY FILED** the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Toby J. Marshall, WSBA #32726<br>tmarshall@terrellmarshall.com<br>Jennifer Rust Murray, WSBA # 36983<br>jmurray@terrellmarshall.com<br>Erika L. Nusser, WSBA #40854<br>enusser@terrellmarshall.com<br>TERRELL MARSHALL LAW GROUP PLLC<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103-8869<br>Telephone:    206-816-6603<br>Facsimile:    206-319-5450<br><br>*Attorneys for Plaintiffs* | Jeffrey Needle, WSBA #6346<br>jneedle@wolfenet.com<br>LAW OFFICES OF JEFFREY L. NEEDLE<br>119 1st Avenue, Suite 200<br>Seattle, Washington 98104<br>Telephone:    206-447-1560<br>Facsimile:    206-447-1523<br><br><br><br><br><br>*Attorneys for Plaintiffs* |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on October 4, 2016, at Seattle, Washington.

s/ Rebekah Davies
Rebekah Davies
rdavies@littler.com
**LITTLER MENDELSON, P.C.**

Firmwide:142969626.5 063012.1092

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 21**
**Case No. 2:15-cv-01299-RAJ**