The Honorable Judge Richard A. Jones

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | HOWARD BERRY and DAVID BERRY,
Individually and on behalf of all others similarly

11 | situated,

12 | Plaintiff,

13 | v.

14 | TRANSDEV SERVICES, INC. f/k/a VEOLIA

15 | TRANSPORTATION SERVICES, INC.;
TRANSDEV NORTH AMERICA, INC., f/k/a

16 | VEOLIA SERVICES, INC., and FIRST
TRANSIT, INC.,

17

18 | Defendants.

CASE NO.  2:15-cv-01299-RAJ

PLAINTIFFS' RESPONSE TO
DEFENDANT FIRST TRANSIT, INC.'S
MOTION TO DISMISS

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

1
2

**TABLE OF CONTENTS**

3  I. INTRODUCTION...............................................................................................1

4  II. STATEMENT OF FACTS...................................................................................3

5
      A.    Plaintiffs' Complaint Pleads Facts Sufficient to Support the
6             Doctrine of Joint Employment...............................................................3

7
      B.    Plaintiffs Should Be Permitted to Amend Their Complaint, if
           Necessary, to Allege Newly Discovered Facts Supporting
8             Their Allegations that First Transit is a Joint Employer.........................5

9  III. ARGUMENT...................................................................................................6

10
      A.    Standard for Motion to Dismiss - Fed. R. Civ. Proc. 12(b)(6)...............6
11
      B.    First Transit and Transdev are "Joint Employers" Within the Meaning
12             of WAC 296-126-092 and RCW 49.12.020...........................................6

13
           1.    The Minimum Wage Acts Applies to Rest Break Violations....................6
14
           2.    The theory of joint employment applies to virtually all aspects of
15                  employment law...........................................................................8

16
           3.    First Transit and Transdev are joint employers within the meaning
17                  of Common Law............................................................................11

18        C.    Minimum Wage and Wage Rebate Acts................................................15

19        D.    The Drivers are Third Party Beneficiaries............................................15

20  IV. CONCLUSION.............................................................................................21

21
22
23
24
25
26

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

# I. INTRODUCTION

Plaintiffs are paratransit drivers in King County and seek to represent a proposed Class of similarly situated persons in this wage and hour lawsuit. The original Defendant, Transdev, is a corporation that contracts with King County Metro in Seattle, Washington to provide transportation services for disabled King County residents. ECF # 22 at ¶ 3.4. Plaintiffs filed suit against Transdev in state court alleging they were denied rest breaks in violation of RCW 49.12.020 and WAC 296-126-092. Transdev removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). ECF # 1.

On or about July 21, 2016, Plaintiffs filed their First Amended Complaint ("FAC"), which added First Transit, Inc. as a Defendant, among other things. ECF # 21. First Transit is a corporation that also contracts with King County Metro in Seattle to provide transportation services for disabled residents of King County. ECF # 22 at ¶ 3.5. Plaintiffs allege that the Defendants jointly operate the paratransit service for King County Accessible Services Division and that they are "joint employers" of Plaintiffs and proposed Class members within the meaning of Washington law. Plaintiffs further allege that both Defendants breached their contracts with King County and that Plaintiffs and Class members are third party beneficiaries of those contracts. *Id.* ¶¶ 9.1 – 10.7.

Transdev filed an answer and cross-claim in response to Plaintiffs' First Amended Complaint. ECF # 25. In its cross-claim, Transdev alleges "First Transit is responsible for managing the routes, scheduling, and dispatch of the drivers, and ensuring compliance with Washington law with regard to driver rest breaks. The opportunity for Transdev Services drivers to take rest breaks is therefore dependent, wholly or in part, on First Transit's performance of its obligations under the Contract." *Id.* at 19:6-10. Although Transdev denies that Plaintiffs were

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 1

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

unable to take rest breaks, Transdev alleges in the alternative that to the extent drivers did not have an opportunity to take the rest breaks to which they were entitled before and/or after March 1, 2015, such lack of opportunity was caused by First Transit's failure to perform its obligations under the Contract. *Id*. at 19:15 – 20:15.  Transdev further alleges that "[t]o the extent Transdev Services . . . may therefore be liable to Plaintiffs for damages, such liability and damages are directly and proximately caused by First Transit's breach of the Contract." *Id*. at 20:19-22. Thus, Transdev alleges it is an intended third-party beneficiary of the contract between First Transit and King County. *Id*. at 21:1-20.

First Transit moves to dismiss Plaintiffs' First Amended Complaint on the grounds that it is not a "joint employer" with Transdev within the meaning of Washington law and that Plaintiffs are not third party beneficiaries of its contract with King County.  First Transit argues that the doctrine of joint employer is limited to claims bought directly under the Minimum Wage Act, chapter 49.46 RCW, and under common law as defined by a case decided in 1918, *Welden v. Skinner & Eddy Corp.*, 103 Wn.2d 243, 174 P. 452 (1918).  First Transit is wrong. Washington law recognizes that the joint employer doctrine also applies to claims for rest breaks under the Industrial Welfare Act, chapter 49.12 RCW.  Moreover, the doctrine of joint employment has far broader application than the vicarious tort liability issue presented in *Skinner & Eddy*.  The elements of the common law doctrine of joint employer are satisfied by the facts pled in Plaintiffs' First Amended Complaint.

Even if the joint employer doctrine were deemed inapplicable to claims for rest break violations under the Industrial Welfare Act, Plaintiffs also state claims for such violations under the Minimum Wage Act,.  Indeed, First Transit admits the joint employer doctrine is applicable to those claims.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 2

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

The contractual promise First Transit made to King County to ensure that drivers take rest breaks in compliance with Washington law conferred a benefit directly to Plaintiffs. It also provided a benefit or immunity to King County. The drivers are therefore direct and intended third-party beneficiaries of the contract between First Transit and King County.

Plaintiffs have recently received documents from Transdev and learned additional facts that clearly demonstrate that First Transit exercised substantial control and supervision over virtually every aspect of the drivers' duties and responsibilities, including rest breaks. If necessary, Plaintiffs are prepared to amend the Complaint to plead these additional facts.

First Transit's motion to dismiss should be denied.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Complaint Pleads Facts Sufficient to Support the Doctrine of Joint Employment.

Plaintiffs allege that "[d]efendants jointly operate the paratransit service for King County Accessible Services Division, employing more than 250 drivers and transporting about 500,000 passengers per year." ECF # 22 at ¶ 1.1. Plaintiffs also allege that "[d]efendants' joint operations are governed by contracts with King County, under which Defendants' promise to comply with all applicable laws, including 'any that require that [driver] employees be provided with periodic breaks during a work day.'" *Id. at* ¶ 1.2. First Transit's contract with King County requires "Defendants to work together 'to develop a plan to ensure driver breaks and lunches,' and '[t]his plan shall conform to applicable law.'" *Id.* at ¶¶ 1.2, 5.2 – 5.5. Plaintiffs allege that both Defendants have engaged in a common scheme and plan of willfully failing to ensure that Plaintiffs take rest breaks and willfully failing to pay Plaintiffs for their missed rest breaks. *Id.* at ¶ 1.4.

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

Plaintiffs First Amended Complaint alleges specific facts, *with examples*, in support of the assertion that First Transit and Transdev are "joint employers." *Id.* at ¶¶ 5.7 – 5.31. In summary, Plaintiffs allege that First Transit 1) had and continues to have substantial control over the employment of the drivers by developing routes and schedules for drivers; 2) supervised and continues to supervise the work of drivers, directly and indirectly; and 3) communicated and continues to communicate with drivers while in route for scheduling routes and rest breaks. *Id.* at ¶¶ 5.7 – 5.9. Plaintiffs allege that the Clients call a reservation line operated by First Transit to schedule a time to be picked up by a driver and that First Transit schedules rides and informs the clients that they will be picked up within a 30-minute window. *Id.* at ¶ 5.15. First Transit provides each driver with a daily manifest of pick-ups via computer on the drivers' vehicle. *Id.* at ¶ 5.17. Those schedules are modified during each shift to manage day of service changes, and First Transit communicates those changes to each driver via the driver's on-board computer. *Id.* Drivers are penalized for late pick-ups and are prohibited from leaving their vehicles while Clients are present. *Id.* at ¶¶ 5.19 – 5.20.

Plaintiffs also allege that before March 1, 2015, no rest breaks were scheduled by First Transit (despite their contractual obligation), and that drivers were unable to take rest breaks due to First Transit's tight scheduling practices. *Id.* at ¶¶ 5.21 – 5.23. After March 1, 2015, one rest break was scheduled on the daily manifest by Transdev, and a second rest break was scheduled by First Transit via the drivers' onboard computer, but the scheduling practices of First Transit left no time to take the rest breaks or the rest breaks were scheduled by First Transit within 15 minutes of the beginning or end of each shift. *Id.* at ¶¶ 5.24 – 5.26. Plaintiffs have complained to both Defendants about the inability to take rest breaks, but those complaints have been ignored. *Id.* at ¶ 5.27.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 4

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

**B. Plaintiffs Should Be Permitted to Amend Their Complaint, if Necessary, to Allege Newly Discovered Facts Supporting Their Allegations that First Transit is a Joint Employer.**

After filing their First Amended Complaint, Plaintiffs received in discovery a document production from Transdev. While a review of these documents is incomplete, Plaintiffs have discovered new facts that support their claims against First Transit. Plaintiffs do not believe that leave to amend the Complaint is required, but Plaintiffs are prepared to amend the Complaint to allege the following facts, if necessary:

- After drivers leave Transdev's base, First Transit is responsible for managing every aspect of drivers' routes, including rest and meal breaks, and thereby jointly controls the working conditions of each driver's employment.

- First Transit has acknowledged its responsibility to schedule driver rest and meal breaks.

- First Transit has actual knowledge that the inability of drivers to take rest and meal breaks is an everyday concern and reoccurring problem.

- One of the most common complaints voiced by drivers to First Transit is First Transit's failure to properly schedule driver rest and meal breaks.

- In March 2015, First Transit developed a plan in accordance with its contractual obligations to ensure driver rest and meal breaks, and acknowledged its ongoing obligation.

- First Transit has the control to change or terminate a driver's routes for the day. Through its control over driver schedules, including breaks, First Transit's also exercises economic control over drivers.

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

- First Transit has retaliated against drivers who complain about rest and meal break violations by changing or terminating a driver's routes for the day.

- On numerous occasions drivers complained to Transdev about retaliation against them by First Transit for having complained about the lack of rest and meal breaks, including First Transit failing to schedule drivers or terminating a driver's routes for the day after the driver requested a break.

## III. ARGUMENT

### A. Standard for Motion to Dismiss - Fed. R. Civ. Proc. 12(b)(6).

To avoid dismissal under Rule 12(b)(6), a plaintiff must aver in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Furthermore, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts . . . ." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (internal quotation marks omitted).

### B. First Transit and Transdev are "Joint Employers" Within the Meaning of WAC 296-126-092 and RCW 49.12.020.

#### 1. The Minimum Wage Act applies to rest break violations.

First Transit argues that the joint employer theory in Washington applies only to claims under the Minimum Wage Act, and that a claim for violation of Washington's rest break regulation arises under the Industrial Welfare Act ("IWA"), RCW 49.12. ECF # 26 at at 5:2 –

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 6

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

7:19.  First Transit premises this argument on a single footnote in *Becerra v. Expert Janitorial,* 181 Wn.2d 186, 196 n.6, 332 P.3d 415 (2014).  While the Court did say generally that it was articulating a joint employment test designed for the MWA, the court did not specifically exclude application of the doctrine to the IWA for purposes of working condition requirements like rest breaks.  *See Becerra,* 181 Wn.2d at 196 n.6.  Moreover, the Washington Supreme Court's decisions relating to rest break claims refute First Transit's argument.  The MWA and the IWA both apply to claims for rest break violations.

In *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.,* the WSNA sought "overtime pay *pursuant to the Minimum Wage Act* (MWA), RCW 49.46.130," for rest breaks that were required under WAC 296-126-092 but were not received.  175 Wn.2d 822, 825, 287 P.3d 516 (2012) (emphasis added).  Like First Transit here, Sacred Heart argued "that the Industrial Welfare Act, not the MWA, dictates the remedy for missed rest breaks."  175 Wn.2d at 830.  Specifically, Sacred Heart asserted "that while there may have been a violation of WAC 296-126-092(4), there was no violation of the MWA, the basis of WSNA's claim for overtime compensation."  *Id.*  The Supreme Court disagreed, concluding "that Sacred Heart violated *the MWA*" because "both the missed opportunity to rest and the additional labor nurses provide constitute 'hours worked'" that are compensable under the MWA.  *Id.* at 826, 832-33 (emphasis added); *see also Wingert v. Yellow Freight Sys., Inc.,* 146 Wn.2d 841, 849, 50 P.3d 256 (2002) ("Employees who must work through their [rest] break are, in effect, providing [their employer] with an additional 10 minutes of labor"; thus, they are entitled to 10 minutes of additional compensation.).  The Court in *Sacred Heart* noted that "[a]lthough WAC 296-126-092 applies to the IWA [chapter 49.12 RCW], not the MWA, the two statutory schemes often work in concert."  175 Wn.2d at

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 7

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

830 n.1. Moreover, "WAC 296-126-092 applies to all occupations subject to the IWA," and "the IWA broadly applies to all employees." RCW 49.12.005.

In *Demetrio v. Sakuma Bros. Farms, Inc.*, the Supreme Court similarly concluded that missed rest breaks are "contrary to the intent of WAC 296-126-092 *and the MWA.*" 183 Wn.2d 649, 658, 355 P.3d 258 (2015) (emphasis added). In discussing the appropriate measure of damages under the rest break provision for agricultural workers—which, like WAC 296-126-092, "is silent about the rate of pay required for employee rest breaks"—the Court concluded that "*the starting point for the calculation is the applicable minimum wage.*" *Demetrio*, 183 Wn.2d at 660 (emphasis added). But the Court rejected the employer's assertion "that separate pay for rest breaks is capped at the minimum wage." *Id.* at 660 n.2. Rather, pay separate from the piece rate must equal *at least* the applicable minimum wage or the pieceworker's regular rate of pay, whichever is greater." *Id.* at 663 (emphasis in original).

As these authorities make clear, the Washington Supreme Court has long held that rest break claim violations give rise to claims under both the MWA and the IWA. Thus, even if the footnote in *Becerra* stood for the proposition that the joint employer doctrine applies only to the MWA (it does not), such a limitation would have no impact on Plaintiffs' first cause of action.

**2. The theory of joint employment applies to virtually all aspects of employment law.**

There is no reason to believe that the Washington Supreme Court would limit the application of the joint employment theory to the MWA. Washington courts routinely look to federal law for guidance for the interpretation of Washington statutes. *E.g.*, *see Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 490, 325 P. 3d 193 (2014) ("Washington courts still look to federal case law interpreting those statutes to guide our interpretation of the WLAD").

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 8

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

Under federal law, "[t]wo or more employers may be considered 'joint employers' if both employers control the terms and conditions of employment of the employee." *E.E.O.C. v. Pac. Mar. Ass'n.*, 351 F.3d 1270, 1275 (9th Cir. 2003) (applying joint employment doctrine to Title VII). In joint employer situations, "no finding of a lack of arm's length transaction or unity of control or ownership is required." *Id.* at 1276. "[I]t is rather a matter of determining which of two, or whether both, [alleged employers] control, in the capacity of employer, the labor relations of a given group of workers." *Id.*

In *Torres-Lopez v. May,* 111 F.3d 633 (9th Cir. 1997), the Ninth Circuit noted that courts consider the following *non-exhaustive* factors when assessing joint employment: "(1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (5) the preparation of payroll and the payment of wages." *Id.* at 639-40; *see also EEOC v. Global Horizons,* 860 F.Supp.2d 1172, 1180 (D. Haw. 2011) (applying test within context of Title VII); *Moreau v. Air France,* 356 F.3d 942, 945-46 (9th Cir. 2004) (adopting joint employment theory under the FMLA);[1] 29 C.F.R. §500.20(h)(4)(ii). Courts also consider additional common law "functional" factors:

---

[1] In *Moreau*, the court ruled on summary judgment that Air France was not a joint employer within the meaning of the FMLA. 356 F.3d at 942. The determination of whether a defendant is a joint employer within the meaning of the FMLA requires that the "relationship ... be viewed in its totality." *Id.* at 951. Central to the court's ruling in *Moreau* was that Air France "did not set or control the employees' work schedules, [or] working conditions, . . . . There is no indication that Air France had the authority to directly 'control' any of the workers. . . ." *Id.* at 950. Although the court acknowledged that even "indirect" control could be sufficient to establish joint employment, the court ruled that Air France's indirect control was insufficient. *Id.* at 951. Here, First Transit has direct control over virtually every minute of the drivers' day after leaving Transdev's base. Moreover, the contractual obligations created by First Transit's contract with

Jeffrey Needle
ATTORNEY AT LAW
200 Maynard Building
119 First Ave South Suite 200
Seattle, Washington 98104
(206) 447-1560 fax (206) 447-1523

(1) whether the work was a "specialty job on the production line," *Rutherford [Food Corp. v. McComb]*, 331 U.S. [722,] 730, 67 S.Ct. [1473, 91 L.Ed. 1772 (1947)];

(2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without "material changes," *id.*;

(3) whether the "premises and equipment" of the employer are used for the work, *id.*; *see also Real*, 603 F.2d at 754 (considering the alleged employee's "investment in equipment or materials required for his task, or his employment of helpers");

(4) whether the employees had a "business organization that could or did shift as a unit from one [worksite] to another," *Rutherford*, 331 U.S. at 730, 67 S.Ct. 1473 ...;

(5) whether the work was "piecework" and not work that required "initiative, judgment or foresight," *id.*; *see also Real*, 603 F.2d at 754 (considering "whether the service rendered requires a special skill");

(6) whether the employee had an "opportunity for profit or loss depending upon [the alleged employee's] managerial skill," *Real*, 603 F.2d at 754;

(7) whether there was "permanence [in] the working relationship," *id.*; and

(8) whether "the service rendered is an integral part of the alleged employer's business," *id.*

*Torres-Lopez v. May,* 111 F.3d at 640.

The fact that First Transit does not directly pay the Plaintiffs and proposed Class members is not determinative of whether First Transit is a joint employer. Transdev and First Transit have a joint contractual obligation to ensure that the drivers receive rest breaks in conformity with Washington law. ECF # 22 at ¶ 5.4. First Transit determines the schedules for drivers and supervises their duties via an on board computer. *Id.* at ¶ 5.7. It determines the time for every aspect of a driver's day, including rest breaks (and meal breaks) and modifies driver

---

King County simply did not exist in *Moreau*. The facts in *Moreau* are readily distinguishable from the facts of this case.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 10

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

schedules during the work shift. *Id.* at ¶¶ 5.7 – 5.9. Drivers use computers provided by First Transit, and First Transit communicates directly and on a continuing basis about the employment conditions and routes of the drivers. *Id.* The service provided by the drivers for First Transit is an integral part of First Transit's business, and without which First Transit would be unable to perform its obligations to King County. *Id.* ¶ 5.13.

Plaintiffs have pled sufficient plausible facts to survive a motion to dismiss.

### 3. First Transit and Transdev are joint employers within the meaning of common law.

First Transit also argues that it is not a joint employer of Plaintiffs and proposed Class members under common law. ECF # 26 at 7:21 – 8:16. Toward that end, First Transit relies exclusively on *Welden v. Skinner & Eddy Corp.*, 103 Wn.2d 243, 174 P. 452 (1918). *Id.* But *Skinner & Eddy* was decided in the context of vicarious tort liability, not in the context of wage and hour laws or breach of contract. *See Fisher v. City of Seattle*, 62 Wn.2d 800, 808, 384 P. 2d 852 (1963) ("[t]he Skinner & Eddy case was determined on the basis of the common-law rules relating to vicarious tort liability"). Unlike the circumstances present in *Skinner & Eddy*, the First Transit contract creates a specific obligation for both Transdev and First Transit to ensure that drivers take rest breaks in compliance with Washington law. The subject of "joint employment" was never discussed in *Skinner & Eddy*.

Contrary to First Transit's assertion, the theory of "joint employment" is not limited to claims under the FLSA. ECF # 26 at 5:9-26.[2] The plausible facts alleged in this case satisfy the common law theory of joint employment. In *Browning Ferris Industries*, 362 NLRB No. 186

---

[2] Also, contrary to First Transit's assertion, there is nothing in the DOL Administrator's 2016 Interpretation that limits a finding of joint employment to one of two scenarios. *Id.* at 12:21 – 14:6. To the contrary, "[t]he concept of joint employment, like employment generally, "should be defined expansively" under the FLSA...." *Torres-Lopez*, 111 F.3d at 639.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 11

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

(2015), the NLRB reconsidered at length the standard for assessing joint-employer status under the National Labor Relations Act. Toward that end, the NLRB concluded that "[i]n determining whether an employment relationship exists for the purpose of the Act, the Board must follow the common-law agency test." *Id.* at 12.

Under the common law standard, the touchstone is the "right to control." *Id.* at 13. But the right to control need not be exclusive and need not be direct and immediate:

> Where a user employer reserves a contractual right to set a specific term or condition of employment for a supplier employer's workers, it retains the ultimate authority to ensure that the term in question is administered in accordance with its preference. . . . In such a case, a supplier's apparently independent control over hiring, discipline, and work direction is actually exercised subject to the user's control. If the supplier does not exercise its discretion in conformance with the user's requirements, the user may at any time exercise its contractual right and intervene. Where a user has reserved authority, we assume that it has rationally chosen to do so, in its own interest. There is no unfairness, then, in holding that legal consequences may follow from this choice.

*Id.* at 13-14. In other words, "[t]he common law recognizes that control may be *indirect*." *Id.* at 14 (emphasis added). Elements of control sufficient to create a joint employer status include dictating the number of workers to be supplied; controlling scheduling, and assigning work; and determining the manner and method of work performance. *Id.* at 15; *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 475, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) (holding that Greyhound, which played a "part in setting up work schedules, in determining the number of employees required to meet those schedules, and in directing the work of the employees in question" had sufficient control to qualify as a joint employer).

In this case, First Transit dispatches all drivers, controlling their schedules. Transdev is generally the supplier of the drivers and First Transit is the user. But Section 3.2.C.9 of the Contract also requires that First Transit have spare drivers available:

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 12

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

1  First Transit will have spare drivers available so that if a driver does not report to
2  the dispatcher window at the designated time, the dispatcher will record the driver
   as absent and will call for an extra board driver in time to make the pull-out. The
3  dispatcher is responsible for assuring that all driver schedules are met.

4  First Transit therefore also plays a part "in determining the number of employees required to

5  meet [the drivers'] schedules." *See Boire*, 376 U.S. at 475.

6      Although Transdev reserves the right to hire and fire drivers, First Transit receives calls

7  from clients and then schedules the workday of drivers to conform with the needs of those

8  clients.  First Transit has independent control over the drivers' schedules, directs and supervises

9  the drivers' work, and has an independent contractual obligation to ensure that drivers take rest

10 breaks.

11

12     In support of its argument, First Transit cites just one case that was decided on a motion

13 to dismiss, and that case is distinguishable.  ECF # 26 at 10:18 – 12:4 (citing *Hugee v. SJC*

14 *Group, Inc.*, 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013)).[3]  In *Hugee*, the plaintiff was hired

15 by SJC to work as a security guard. 2013 WL 439926, at *1.  The plaintiff was supervised by an

16 SJC employee who provided instructions to the plaintiff with respect to work assignments and

17 scheduling.  *Id.*  The plaintiff was assigned by SJC to work at a job location for a company called

18 NESCTC.  *Id.*  In his complaint, the plaintiff alleged NESCTC was his joint employer.  The only

19

20 facts plaintiff alleged with respect to NESCTC's status as a joint employer were that plaintiff

21 _____
   [3] First Transit relies primarily on cases that were decided on summary judgment or after trial to
22 support its assertion that Plaintiffs have failed to plead sufficient facts to withstand a motion to
   dismiss. ECF # 26 at 10:18 – 12:4 (citing *Real v. Driscoll Strawberry Ass'n, Inc.*, 603 F.2d 748,
23 756 (9th Cir. 1979) (reversing grant of summary judgment, finding employees had raised
   genuine issue of material fact on joint employer theory); *Torres-Lopez*, 111 F.3d 633 (same);
24 *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) (affirming judgment
   in favor of plaintiff-employees who brought minimum wage claims against public social services
25 agencies under joint employer theory); *Moreau*, 356 F.3d 942 (affirming summary judgment);
   *Velez v. New Haven Bus Service, Inc.*, 35 F. Supp. 3d 219 (D. Conn. 2014) (granting summary
26 judgment)).

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

informed NESCTC when he arrived and when he departed at the beginning and end of each shift, that he submitted timesheets to NESCTC, and that NESCTC visited his worksite once a month and instructed him regarding the best places to position himself to watch out for "blind spots." *Id.* at *2.  On these facts, the court concluded NESCTC did not qualify as a joint employer because the facts suggest that NESCTC's involvement with plaintiff was limited to quality control and did not constitute formal control over the plaintiff's working conditions in any respect. *Id.* at *5 – *8.

Unlike NESCTC, First Transit is responsible for every aspect of a driver's day after the driver leaves Transdev's facility.  First Transit does not merely request that a driver notify the company when he starts and ends his shift; rather, First Transit controls each driver's day from start to finish, including scheduling routes and rest and meal breaks.  ECF # 22 at ¶¶ 5.7 – 5.9.  First Transit not only requires drivers to submit timesheets to the company but also keeps detailed records of each driver's every movement, data that First Transit maintains in its Trapeze system.  *Id.* at ¶ 5.7 – 5.8.  And First Transit interacts with drivers from the beginning to the end of their shifts through manifests provided by First Transit and through on board computers and telephones that First Transit uses to keep in constant contact with drivers.  *Id.* at ¶¶ 5.7 – 5.9.  Despite First Transit's assertions to the contrary, the facts set forth in Plaintiffs' complaint sufficiently establish that First Transit is a common law joint employer.

Moreover, discovery from Transdev has already revealed additional facts that support Plaintiffs' claim that First Transit is a joint employer.  As in *Driscoll Strawberry Ass'n, Inc.*, *Torres-Lopez*, *Moreau*, and *Velez*, Plaintiffs should be permitted to obtain discovery from First Transit.  First Transit's motion to dismiss should be denied or, in the alternative, Plaintiffs should be granted leave to amend their complaint.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 14

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

**C. Minimum Wage and Wage Rebate Acts.**

First Transit argues that Plaintiffs' claims for lost wages and overtime under the MWA, chapter 49.46 RCW, and Wage Rebate Act, chapter 49.52 RCW, fail on the ground that First Transit is not a "joint employer" and even if it were that Plaintiffs fail to allege sufficient facts to satisfy the economic realities test. First Transit is wrong. As noted above, claims for rest break damages are actionable under the Minimum Wage Act, and Plaintiffs have pleaded sufficient facts to pursue those claims. *See* Section II.B. Those allegations also support the claim that First Transit willfully failed to pay wages due to Plaintiffs and proposed Class members under statute, ordinance, or contract. *See* RCW 49.52.050(2); RCW 49.52.070.

**D. The Drivers are Third Party Beneficiaries.**

A third-party beneficiary is one who, though not a party to a contract, will nevertheless receive direct benefits therefrom. *Lonsdale v. Chesterfield*, 19 Wn.App. 27, 31, 573 P.2d 822 (1978). "The right of a third party to [enforce] a contact depends, as a rule, upon whether the contract is for his direct benefit or whether his benefit under it is merely incidental, indirect or inconsequential." *Lonsdale*, 19 Wn.App. at 32.

In determining the status of a third party, "the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect or consequential." *McDonald Const. Co. v. Murray*, 5 Wn.App. 68, 79, 485 P.2d 626 (1971). The intention of the parties in this respect "is to be gleaned from the contract[] as a whole construed in the light of the circumstances under which [it] was made." *Wolfe v. Morgan*, 11 Wn.App. 738, 742, 524 P.2d 927 (1974).

'If the terms of the contract necessarily require the promisor to confer a benefit upon a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person . . . (citation); and this should be sufficient to enable the

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 15

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

latter to enforce the contract, although it also worked to the advantage of the immediate parties thereto . . . (citations), and although the actual purpose motivating the parties in making the provision in question was the purely selfish one of benefiting or protecting themselves, rather than of benefiting the third person.'

*Wolfe*, 11 Wn.App. at 742 (quoting *Vikingstad v. Baggott*, 46 Wn.2d 494, 496, 282 P.2d 824 (1955)).

In *Lonsdale*, investors in a real estate development brought an action against the developer, Chesterfield, and its assignee, Sansaria, for failure to install a water system. 19 Wn.App. at 29. Chesterfield platted a residential development and sold lots in the development to various purchasers by "conditional sale" contracts in which Chesterfield agreed to install a domestic water system for the plat. *Id.* Without having installed a water system, Chesterfield sold an undeveloped portion of the land to Sansaria. *Id.* By the terms of the sale, Sansaria agreed to install the water system for the development. *Id.* The court found the plaintiff-investors were third party beneficiaries of Sansaria's agreement to install the water system for the entire Sansaria development, stating Sansaria's "agreement to install the system was part of the consideration given in exchange" under the contract. *Id.* at 31. Thus, the court found, "[o]bviously, both the conditional sale contract purchasers and the plaintiff-investors would be directly benefited by Sansaria's installation of the water system." *Id.*

The same is true here. In agreeing to provide transportation services for disabled residents of King County, First Transit explicitly agreed to develop a plan to ensure paratransit drivers receive rest breaks that conform to all applicable laws. ECF # 22 at ¶ 5.4. First Transit's promise to ensure drivers receive the rest breaks to which they are entitled under the law was part of the consideration given in exchange under the contract. Performance of that contractual

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

provision directly benefits Plaintiffs.  Thus, the parties *intended* that First Transit would assume an obligation to the drivers, which is a direct benefit to the drivers.

Contrary to First Transit's assertion, this case is nothing like *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 886, 719 P.2d 120 (1986).  In that case, Clallam County and Kennedy Engineers entered into a contract to design, plan, and supervise construction of the Sekiu-Clallam Bay sewerage system.  The County contracted with Del Guzzi Construction for construction of the project.  Del Guzzi subcontracted with Global Northwest, a minority contractor, to obtain federal funding.  *Id.* at 880-81.  Global encountered significant cost overruns and brought a claim against Del Guzzi to recover the overruns.  Global also commenced a third-party action against the County and Kennedy.  *Id.* at 881.  Global argued that because the project required minority participation in order to receive federal funding, Global was a third-party beneficiary of the contracts between the County and Kennedy, and the County and Del Guzzi.  *Id.* at 886.  The court rejected Global's argument, finding nothing in either contract required the parties to protect Global from cost overruns, and thus no third-party beneficiary relationship had been created.  *Id.* at 887.

Unlike the contracts at issue in *Del Guzzi Construction*, the Contract between First Transit and King County requires First Transit to assure drivers receive rest breaks.  The only reasonable interpretation of First Transit's Contract with King County establishes the parties *did* intend it to assume a direct obligation to the drivers.

Moreover, First Transit's strained interpretation of the contract is contrary to the basic rules of contract interpretation.  The primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract.  *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013).  Washington follows the

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 17

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

"objective manifestation theory" of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst*, 154 Wn.2d at 504, 115 P.3d 262. Washington Courts view the contract as a whole, interpreting particular language in the context of other contract provisions. *See Berg v. Hudesman,* 115 Wn.2d 657, 667, 801 P.2d 222 (1990) ("the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from 'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations 581*581 advocated by the parties") (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)); *The Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 180-82, 810 P.2d 27 (1991) (determining meaning of "fence" by reference to "overall purpose" of homeowner's agreement), *review denied,* 117 Wn.2d 1013 (1991); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000).

The Contract with King County clearly establishes First Transit's responsibility for ensuring that drivers take rest breaks in compliance with Washington law. Section 6.5(D)(12) of the contract provides:

> The C.C.-Contractor [First Transit] shall work with S.P.-Contractors [Transdev] to develop a plan to ensure driver breaks and lunches that shall have the least impact on the provision of service. This plan shall conform to applicable law.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 18

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

ECF # 27, Ex. 2, § 6.5(D)(12) (p. 89). Insofar as First Transit does not directly employ drivers, it necessarily follows that the referenced drivers to whom First Transit owes a responsibility are Plaintiffs and the Class members they represent.

First Transit argues that the contractual provision simply requires it to ensure that driver breaks have the least impact on the provision of services and that it has no responsibility to assure that drivers take rest breaks. ECF # 26 at 15:1-12. First Transit's argument ignores the contractual requirement that "this plan conform to applicable laws." *Id.* This contractual provision is a requirement that *both* Transdev and First Transit develop a plan to ensure driver breaks which confirm to applicable laws, including the requirement for rest breaks. The contract acknowledges that the jointly developed plan, which conforms to all applicable laws, should have the least impact on the provision of services. Moreover, Plaintiffs are prepared to allege, if an amendment is required, that First Transit assumed and recognized its duty and responsibility to assure that Plaintiffs received rest breaks as required by law.

Section 6.5(D)(1) provides:

> Additionally, the C.C.-Contractor [First Transit] shall provide non-reservation coverage from 5:00 p.m. to 8:00 a.m. to process ride inquires, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to ensure that *its* drivers receive breaks and lunches.

ECF # 27, Ex. 2, § 6.5(D)(1) (p. 89) (emphasis added). First Transit asserts its employees were composed of reservationists, schedulers, dispatchers, passenger service staff, quality assurance staff, and technical and support staff, ECF # 26 at 15:3-5, but not drivers, and it therefore had no responsibility to assure compliance with rest breaks for drivers. But this contractual provision cannot be read in isolation. The contract must be read as a whole and in light of its purpose. *Berg*, 115 Wn.2d at 667. Since First Transit admits that it did not *directly* employ "drivers,"

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

only reservationists, schedulers, dispatchers, passenger service staff, quality assurance staff, and technical and support staff, the only drivers to whom the provision could apply are Plaintiffs. The contractual provision requiring First Transit "to ensure that its drivers receive breaks and lunches" would be rendered meaningless unless the contract is interpreted to apply to Plaintiffs. The overall purpose of the contract is to provide disabled residents of King County with paratransit services in conformity with all applicable laws. Those services would not be possible without Plaintiffs to provide them. First Transit's interpretation of the contract would defeat the Contract's very purpose.

Moreover, despite First Transit's assertion to the contrary, the cases it cites to do not stand for the general proposition that a promise to comply with the law can never create an intended third-party beneficiary relationship because there is no such general proposition. Dkt. No. 26 at 16:13-23 (citing cases). On the contrary, courts have found that promises, even implied promises to comply with the law, may be sufficient to establish a third party beneficiary relationship. *See, e.g., Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*, 2009 WL 1969083, at *3 (D. N.J. July 1, 2009) (finding implied promise to comply with state laws in real estate inspection contract created genuine issue of material fact as to whether consumer-purchaser of modular home was a member of a class of third party beneficiaries intended under the contract); *Ethelberth v. Choice Security Co.*, 91 F.Supp.3d 339, n.23 (E.D.N.Y. 2015) (noting dismissal of plaintiff's "claim for straight time wages ... due to his failure to exhaust administrative remedies does not bar him from recovering unpaid prevailing rate wages under a breach of contract theory, so long as he pleads his breach of contract claim as a third-party beneficiary"); *Wadsworth v. KSL Grand Wailea Resort, Inc.*, 818 F.Supp.2d 1240, 1254 (D. Haw. 2015) (finding plaintiffs adequately plead employer breached an implied contract with

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS - 20

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

customers that employer would distribute service charges to food and beverage servers, for which employees were intended third party beneficiaries).   The relevant inquiry is whether Plaintiffs adequately plead that the contract between First Transit and King County directly benefits drivers.  Plaintiffs' Complaint meets this test.

## IV.  CONCLUSION

First Transit's Motion to dismiss should be DENIED.

Dated this 24th day of October, 2016.

LAW OFFICE OF JEFFREY NEEDLE

By, /s/ Jeffrey Needle
Jeffrey L. Needle, WSBA #6346
Email: jneedle@wolfenet.com
119 1st Avenue, Suite 200
Seattle, Washington 98104
Telephone: 206.447.1560
Facsimile: 206. 447.1523

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, WSBA #32726
Toby J. Marshall, WSBA #32726
Email: tmarshall@terrellmarshall.com
Jennifer Rust Murray, WSBA # 36983
Email: jmurray@terrellmarshall.com
Erika L. Nusser, WSBA #40854
Email: enusser@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: 206.816.6603
Facsimile: 206.319.5450

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523

1

## DECLARATION OF SERVICE

2      I am a resident of the State of Washington, over the age of eighteen years, and not a party

3  to the above-captioned action. My business address is 119 First Avenue South, Suite 200,

4  Seattle, WA 98104.  I hereby certify that on October 24, 2016, I electronically filed the foregoing

5  **PLAINTIFFS' RESPONSE TO DEFENDANT FIRST TRANSIT'S MOTION TO**

6

7  **DISMISS** with the Clerk of the Court Listing the CM/ECF system which will send notification

8  of such filing to The Honorable Richard A. Jones and to the following:

9  Breanna Sheetz Martell, Daniel L. Thieme
   LITTLER MENDELSON, PC

10  One Union Square
    600 University Street, Suite 3200

11  Seattle, WA  98101-3122

12  Attorneys for First Transit

13  Stellman Keehnel, Anthony Todaro, Austin Rainwater
    DLA Piper LLP

14  701 Fifth Avenue, Suite 7000
    Seattle, WA  98101-7044

15  Attorneys for Transdev Defedants and Cross-Claimant Transdev Services, Inc.

16

17      I declare under penalty of perjury under the laws of the State of Washington that the

18  above is true and correct.

19

20  Executed on October 24, 2016, at Seattle, Washington.

21

22

23                    /s/ Lonnie Lopez

24                    Lonnie Lopez

25

26

JEFFREY NEEDLE
ATTORNEY AT LAW
200 MAYNARD BUILDING
119 FIRST AVE SOUTH SUITE 200
SEATTLE, WASHINGTON 98104
(206) 447-1560 fax (206) 447-1523