1

2

3

4

5

6

The Honorable Richard A. Jones

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

HOWARD BERRY and DAVID BERRY,
individually and on behalf of all others similarly
situated,

Case No.: 2:15-cv-01299-RAJ

11

Plaintiffs,

12

v.

13

14

15

TRANSDEV SERVICES, INC. f/k/a VEOLIA
TRANSPORTATION SERVICES, INC.;
TRANSDEV NORTH AMERICA, INC., f/k/a
VEOLIA SERVICES, INC.; and FIRST
TRANSIT, INC.,

**DEFENDANT FIRST TRANSIT,
INC.'S MOTION TO DISMISS
TRANSDEV SERVICES, INC.'S
CROSS-CLAIM FOR FAILURE TO
STATE A CLAIM**

**NOTING DATE: NOVEMBER 18,
2016**

16

Defendants.

17

18

19

20

21

22

23

24

25

26

**FIRST TRANSIT, INC.'S MOTION TO DISMISS**
**Case No. 2:15-cv-01299-RAJ**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 3

III.    LEGAL AUTHORITY AND ARGUMENT.......................................................... 4

        A.      Standard For Motion To Dismiss Pursuant To FRCP 12(b)(6) ............................ 4

        B.      Washington Law Places the Obligation to Provide Rest Breaks on the
                Employer, Which Is Transdev ................................................................... 5

        C.      Transdev's First Claim for Relief -- Based on its Allegation That It Was in
                Privity of Contract With First Transit -- Fails To State A Claim ......................... 6

        D.      Transdev's Second Claim for Relief -- Based on its Allegation That It Was
                an Intended Third-Party Beneficiary of First Transit's Contract -- Fails To
                State A Claim ............................................................................................... 8

                1.      First Transit's Contract Does Not Manifest Any Intent That First
                        Transit Was Assuming a Direct Obligation to Transdev ......................... 9

                2.      Under Controlling Washington Supreme Court Precedent,
                        Transdev Is Not An Intended Third-Party Beneficiary of the
                        Contract ......................................................................................... 11

        E.      Any Contract that Purported to Indemnify Transdev for Its Obligation to
                Provide Rest Breaks Would Be Illegal and Unenforceable ............................... 15

IV.     CONCLUSION ................................................................................................. 17

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# TABLE OF AUTHORITIES

**PAGE**

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Pipe and Construction Company v. Harbor Construction Company,*
   51 Wn.2d 258, 317 P.2d 521 (1958)................................................................7, 8, 12, 13

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).....................................4, 5

*Astra USA, Inc. v. Santa Clara County,*
   563 U.S. 110 (2011)...............................................................................................11

*Babb v. v. Regal Marine Indus., Inc.,*
   186 Wn. App. 1003 (2015)......................................................................................7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................4, 5, 6

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ....................................................................................5

*Brewer v. Oriard Powder Co.,*
   66 Wn.2d 187, 401 P.2d 844 (1965)........................................................................6

*Caldas v. Affordable Granite & Stone, Inc.,*
   820 N.W.2d 826 (Minn. 2012).................................................................................11

*D'Amato v. Wis. Gas Co.,*
   760 F.2d 1474 (7th Cir. 1985) ...............................................................................11

*Del Guzzi Const. Co., Inc. v. Global Northwest, Ltd., Inc.,*
   105 Wn.2d 878 (1986) ...........................................................................11, 12, 13, 14

*Detweiler Bros. v. John Graham & Co.,*
   412 F. Supp. 416 (E.D. Wash. 1976) (Neill, C.J.) ..................................................7

*Gustafson v. Bell Atlantic Corp.,*
   171 F. Supp.2d 311 (S.D.N.Y. 2001)......................................................................16

**FIRST TRANSIT, INC.'S MOTION TO DISMISS -** ii
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

*Kilgore v. Shriners Hospitals for Children,*
   190 Wn. App. 429, 360 P.3d 55 (2015) ...............................................................15

*Lobak Partitions, Inc. v. Atlas Const. Co.,*
   50 Wn. App. 493, 749 P.2d 716 (1988) ................................................................7

*Local 1035, Int'l Brotherhood of Teamsters v. Pepsi Allied Bottlers, Inc.,*
   99 F. Supp.2d 219, (D. Conn. 2000) ...................................................................16

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) (en banc) ..............................................................5

*Lyle v. Food Lion,*
   954 F.2d 984 (4th Cir.1992) ...............................................................................16

*McDonald Const. Co. v. Murray,*
   5 Wn. App. 68 (1971) ........................................................................................14

*Metzler Inv. V. GMBH v. Corinthian Colleges, Inc.,*
   540 F.3d 1049 (9th Cir. 2008) ............................................................................5

*Pellino v. Brink's, Inc.,*
   164 Wn. App. 668, 267 P.3d 383 (2011) ...................................................5, 15, 16

*Thomas v. Wilfac, Inc.,*
   65 Wn. App. 255 (1992) .....................................................................................14

*Washington State Nurses Assoc. v. Sacred Heart Medical Center,*
   175 Wn.2d 822, 287 P.3d 516 (2012) ...................................................................6

STATUTES

Fair Labor Standards Act (FLSA) ...................................................................2, 15, 16

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ...................................................1, 4, 5

Restatement (Second) of Contracts ...........................................................................11

WAC 296-126-092(4) ................................................................................................5

Washington Minimum Wage Act (WMWA) .............................................................15

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - iii
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

## I. INTRODUCTION

Defendant Transdev Services, Inc.'s ("Transdev") Cross-Claim against newly named Defendant First Transit, Inc. ("First Transit") should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because Transdev has not stated and cannot state any claim against First Transit.

As shown by Transdev's allegations, and by the contracts whose contents are alleged in the Cross-Claim (and which the Court can consider on a motion to dismiss for that reason), Plaintiffs are drivers employed by Transdev under Transdev's contract with King County Metro ("King County") to provide paratransit services for individuals with disabilities. Plaintiffs originally filed this lawsuit only against their employer, Transdev, alleging that Transdev had failed to provide rest breaks in accordance with Washington law. It is undisputed that First Transit serves a limited role in providing dispatch and scheduling services for the paratransit program. First Transit has no responsibility for hiring, training, disciplining, firing, or paying the drivers. Further, First Transit does not own any of the vehicles or facilities where the drivers work. It was only when Plaintiffs failed to obtain free discovery from First Transit through a third-party subpoena (which requested extremely burdensome and expensive production of data that is owned by King County) that Plaintiffs filed their First Amended Complaint naming First Transit as a party, and Transdev followed suit by filing its Cross-Claim against First Transit.

Transdev admits that it employs the drivers who are the plaintiffs in this case, and does not allege that First Transit was a joint employer of the drivers. As the drivers' sole employer, Transdev was solely responsible for ensuring that the drivers received rest breaks under Washington law.

Transdev seeks to shift its responsibility to third-party First Transit by virtue of a contract between First Transit and King County. Transdev is not a party to that contract, and has no other

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 1**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1    contractual relationship with First Transit.  Thus, there is no basis for Transdev to assert that it

2    has a direct contractual right (privity of contract) against First Transit.

3         There is also no basis for Transdev's claim that it is an intended third-party beneficiary of

4    First Transit's contract with King County.  The principal term of that contract on which Transdev

5    relies (and which Transdev misrepresents in its Cross-Claim) makes clear that First Transit's

6    obligation is to King County, not to Transdev.  That term requires that "The C.C.-Contractor

7    [First Transit] shall work with S.P.-Contractors [Transdev] to develop a plan to ensure driver

8    breaks and lunches *that shall have the least impact on the provision of service*.  This plan shall

9    conform to applicable law."  Declaration of Breanne Martell ("Martell Decl."), Ex. 2, §

10   6.5(D)(12) (p. 89) (emphasis added).  This contractual language does not manifest any intent that

11   First Transit assume a direct contractual obligation to Transdev with regard to the scheduling of

12   breaks.  And as discussed below, other provisions of the contract, combined with controlling

13   Washington case law, further establish that Transdev was not an intended third-party beneficiary

14   of the contract between First Transit and King County.

15        Finally, even if Transdev had contractual rights under King County's contract with First

16   Transit (it does not), any contract by which Transdev sought to be indemnified for failing to

17   provide rest breaks to its driver employees would be illegal and unenforceable.  Washington has

18   followed a long line of federal cases under the Fair Labor Standards Act in holding that an

19   employer cannot seek indemnification for violations of the Washington Minimum Wage Act

20   because it would undermine the public policy of ensuring that employers are motivated to

21   comply with labor laws.  The same public policy applies to the rest break regulation.  Thus, even

22   assuming that Transdev has contractual rights under King County's contract with First Transit,

23   Transdev cannot maintain its Cross-Claim against First Transit.

24        For these reasons, Transdev's Cross-Claim against First Transit must be dismissed in its

25   entirety.

26

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

## II.     STATEMENT OF FACTS

King County Metro ("King County") manages a Paratransit Transportation program to provide van service for members of the public with disabilities.  Declaration of Breanne Martell ("Martell Decl."), Ex. 1 (Transdev Contract), § 4.2 (pp. 39-40).  King County contracted with Transdev to have Transdev provide such van transportation services for disabled King County residents.  Transdev Defendants' Answer to First Amended Complaint and Cross-Claim ("Transdev Answer") [Dkt. No. 25], p. 3, § 3.3.  Under the contract, Transdev was the "Service Provider" (S.P.) Contractor, with responsibility to "receive trip schedules from the Control Center on a daily basis" and "send out vehicles with drivers to provide the trips."  Martell Decl., Ex. 1, pp. 1-2 & § 4.1(B)(1) (p. 39); *see also* Transdev Answer, p. 18, § 4.  King County also contracted with First Transit, an independent business, to serve as the "Control Center" (C.C.) Contractor and assist the Service Provider (Transdev) by acting as "the point of public contact for ride screening, ride scheduling, and dispatching."  Transdev Answer, p. 4, § 3.5; Martell Decl., Ex. 2 (First Transit Contract), pp. 1-2 & § 4.1(B)(1) (p. 43).

Transdev's conclusory allegation that it is in privity of contract with First Transit is shown to be false by the contracts themselves.  Transdev and First Transit separately contracted with King County to provide different services to King County.  Martell Decl., Ex. 1 (Transdev Contract with King County) & Ex. 2 (First Transit Contract with King County); *see also* Transdev Answer, pp. 3-4, §§ 3.3 & 3.5, and p. 18, § 4.  King County dictated, through those separate contracts with Transdev and First Transit, how the services would be provided.  Martell Decl., Ex. 2, § 6 (pp. 74-99); Ex. 1, § 5 (pp. 50-69).  The party funding and ultimately benefiting from the drivers' work was King County.  Martell Decl., Ex. 2, p. 2; Ex. 1, p. 2.

Plaintiffs' First Amended Complaint ("FAC") is predicated solely on alleged failures to provide rest breaks to the drivers required by Washington regulation.  FAC [Dkt. No. 22], §§ 1.2-1.4, 4.3(b), (c) and (m), 4.4, 5.21-5.31.  In turn, Transdev alleges that, to the extent its drivers did not take their rest breaks, First Transit is liable for breaching its contract with King County.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - 3
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1  Transdev Answer, pp. 19-21, §§ 8-11, 17.  It is undisputed that the drivers were employed by

2  Transdev.  *Id.*, p. 3, §§ 3.1-3.2, and p. 19, § 6.  Indeed, the contract between King County and

3  Transdev specifies that Transdev is responsible for: (1) hiring, training, and supervising drivers;

4  (2) deploying drivers and vehicles on a daily basis; (3) developing a safety program to include

5  driver procedures and driver incentives; (4) ensuring that it has an adequate number of drivers

6  available to provide service; (5) determining work assignments for drivers; (6) ensuring that

7  drivers meet on-time performance standards; and (7) using and maintaining vehicles supplied by

8  King County.  Martell Decl., Ex. 1, §§ 5.1(A)(2) (p. 50); 5.1(E)(1)(a), (k) (p. 52); 5.1(G)(1), (3),

9  (6) (p. 54); 5.2(A) (pp. 56-57); 5.2(D) (pp. 57-58); 5.2(F) (pp. 58-59); 5.4 (p. 61).  The contract

10  specifically refers to the drivers as "S.P.-Contractor's [Transdev's] drivers."  *Id.*, §§ 5.1(D)(4)-

11  (5) (p. 51).

12      The contracts also make clear that First Transit did ***not*** employ the drivers.  Instead, the

13  "staff" of First Transit – those employees that First Transit was responsible for hiring, training,

14  and supervising – were "reservationists, schedulers, dispatchers, passenger service, quality

15  assurance, technical and other support staff to collect data and report."  Martell Decl., Ex. 2, §

16  6.1(A)(5)(a) (pp. 74-75); *see also id.*, § 6.3 (pp. 81-87).  Transdev has not made any allegations

17  that First Transit employed the drivers, paid the drivers, or had any control over the wages paid

18  to the drivers, or that the driver's work was done for First Transit's benefit.

19  **III.    LEGAL AUTHORITY AND ARGUMENT**

20      **A.    Standard For Motion To Dismiss Pursuant To FRCP 12(b)(6).**

21      For the Cross-Claim to survive this Rule 12(b)(6) motion, the claims must meet the

22  pleading standard established by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550

23  U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

24  Ct. 1937, 173 L. Ed. 2d 868 (2009).  These cases shifted the federal pleading standard from

25  notice pleading to a heightened standard.  A complaint must contain "sufficient factual matter,

26  accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

(*quoting Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of the plaintiff's factual allegations, but is "not required to indulge unwarranted inferences." *Metzler Inv. V. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008) (citation omitted). "[A] pleading offering only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In ruling on a Rule 12(b)(6) motion, a district court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting the motion into one for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Here, Transdev has alleged contents of the Transdev and First Transit contracts in its Cross-Claim, *see* Transdev Answer, pp. 18-19, §§ 4-6, and no party questions the authenticity of the documents. Therefore, the Court should consider the contracts in ruling on First Transit's motion to dismiss.

If the pleading "could not possibly be cured by the allegation of other facts," then the Court should dismiss it with prejudice and deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). Pursuant to this legal standard, Transdev's Cross-Claim should be dismissed in its entirety with prejudice.

B.      **Washington Law Places the Obligation to Provide Rest Breaks on the Employer, Which Is Transdev.**

Plaintiffs' First Amended Complaint is predicated solely on alleged failures to provide rest breaks to the drivers required by Washington regulation. FAC, §§ 1.2-1.4, 4.3(b), (c) and (m), 4.4, 5.21-5.31. Under Washington law, it is the employer's obligation to provide employees with paid rest breaks and compensate them for missed breaks. WAC 296-126-092(4); *Pellino v.*

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - 5
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

*Brink's, Inc.*, 164 Wn. App. 668, 688-90, 267 P.3d 383 (2011); *Washington State Nurses Assoc. v. Sacred Heart Medical Center,* 175 Wn.2d 822, 831-32, 287 P.3d 516 (2012). It is undisputed that the drivers were employed by Transdev. Transdev Answer, p. 3, §§ 3.1-3.2, and p. 19, § 6; Martell Decl., Ex. 1, §§ 5.1-5.2 (pp. 50-59). Transdev does not allege that First Transit employed or jointly employed the drivers. Transdev Answer, p. 19, § 6. Thus, with respect to Transdev's Cross-Claim, it is undisputed that First Transit had no direct obligation under Washington law to provide the drivers with rest breaks, or to compensate them for missed breaks.

### C. Transdev's First Claim for Relief -- Based on its Allegation That It Was in Privity of Contract With First Transit -- Fails To State A Claim.

Transdev's Cross-Claim against First Transit is based solely on its allegations that First Transit breached its contract with King County, a contract to which Transdev was not a party. Transdev alleges in a conclusory fashion: "Upon information and belief, First Transit, Transdev, and King County are parties in privity to a contract, and/or series of contracts, for the provision and implementation of King County's paratransit program (the "Contract"). Transdev Answer, p. 18, § 4. The contracts themselves, however, on which Transdev purports to rely, show that this conclusory allegation is false. As is evident on the face of the contracts, there are two separate contracts that were executed at different times: one contract between King County and Transdev (entered into in May 2008), and a separate contract between King County and First Transit (entered into in June 2008). *See* Martell Decl., Ex. 1 & 2. The only entity that is a party to both contracts is King County—no contract exists between First Transit and Transdev. As such, Transdev's demonstrably false allegation that it is in "privity of contract" with First Transit must be disregarded. *Twombly*, 550 U.S. at 555.

Contractual privity is a concept that refers to parties with a direct contractual relationship. *See, e.g., Brewer v. Oriard Powder Co.*, 66 Wn.2d 187, 189, 401 P.2d 844, 846 (1965) (holding that plaintiffs who did not purchase anything from defendant were not in contractual privity);

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 6**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1    *Babb v. v. Regal Marine Indus., Inc.*, 186 Wn. App. 1003, at *2-3 (2015) (unpublished) (holding

2    that, although the contract between the plaintiff-buyer and a dealer identified the defendant-

3    manufacturer, "we conclude that [the plaintiff-buyer] had no contractual relationship with [the

4    defendant-manufacturer] and, therefore, no privity with [the defendant]"); *Detweiler Bros. v.*

5    *John Graham & Co.*, 412 F. Supp. 416, 418 (E.D. Wash. 1976) (Neill, C.J.) (noting that two

6    parties who had contracted separately with a University and the University's general contractor,

7    and not with each other, did not have privity of contract between them). "Under ordinary

8    circumstances, a stranger to a contract may not sue. A third party may enforce a contract to

9    which he is not in privity only if the contracting parties intended to secure to him personally the

10   benefits of the provisions of the contract." *Lobak Partitions, Inc. v. Atlas Const. Co.*, 50 Wn.

11   App. 493, 497, 749 P.2d 716, 718 (1988) (holding that sub-contractor could not bring breach of

12   contract claim against parties with whom it did not have a contractual relationship).

13       Here, Transdev alleges that it is in privity of contract with First Transit on the basis that

14   both Transdev and First Transit have related contracts with King County. The Washington

15   Supreme Court, however, has rejected such a claim in a similar case. In *American Pipe and*

16   *Construction Company v. Harbor Construction Company*, 51 Wn.2d 258, 317 P.2d 521 (1958),

17   the City of Anacortes contracted with a pipe supplier and separately contracted with an

18   installation contractor for the city's new water supply system. *Id.* at 259-60. Among other

19   issues, the installation contractor sought to enforce the pipe supplier's contract with the city

20   because of the supplier's delays in delivering pipe past the guaranteed date in the contract. *Id.* at

21   262. The Court began its analysis by asserting "it is plain that no privity of contract existed

22   between the installation contractor and the pipe supplier with regard to the pipe which the

23   supplier contracted with the city to deliver." *Id.* Nonetheless, the Court proceeded to evaluate

24   the installation contractor's claim that there was privity of contract based on the rule of

25   interpretation that "contracts which form parts of the same transaction should be read and

26   construed together." *Id.* at 263. The Court concluded that, while related contracts could be used

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

in interpreting the meaning of each contract, it did not create a contractual relationship between

the pipe supplier and the installation contractor. *Id.* at 264-65.[1]  Rather, "the true nature of the

installation contractor's contention is that it is entitled to damages...as a third-party beneficiary."

*Id.* at 265.  (The Court went on to hold that the installation contractor was not an intended third-

party beneficiary either.  *See, infra*, section III.D.2.)

       The same conclusion must be applied in the present case.  Just like the City of Anacortes,

King County separately contracted with two contractors to accomplish a government project.

Similar to the pipe supplier, First Transit contracted with King County to provide scheduling and

dispatch services for the paratransit program.  Like the installation contractor, Transdev

contracted with King County to provide drivers for the paratransit program.  Even though the

contracts were related, there was no contractual relationship between Transdev and First Transit.

As such, Transdev has no claim against First Transit for breach of First Transit's contract with

King County unless it is an intended third-party beneficiary of the contract.  As explained below,

based on *American Pipe* and other binding authority, Transdev also cannot sue First Transit on a

third-party beneficiary theory.

     **D.**     **Transdev's Second Claim for Relief -- Based on its Allegation That It Was an**
                **Intended Third-Party Beneficiary of First Transit's Contract -- Fails To**

                **State A Claim.**

       Transdev's allegations in its Second Claim for Relief fail because First Transit did not

undertake an intended third-party beneficiary contractual obligation running directly to

Transdev.  Instead, Transdev was merely an incidental beneficiary of the contract.  An incidental

beneficiary has no right to enforce the contract.

---

[1] The Court also noted that the contracts were not part of the same transaction in any event because they were not made at the same time and place. *Id.* at 265.  The same is true here: Transdev's contract with King County was entered into in May 2008 and the start-up date was June 1, 2008, while First Transit's contract with King County was entered into in June 2008 and the start-up date was July 1, 2008.  Martell Decl., Ex. 1, pp. 1-2; Ex. 2, pp. 1-2.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - 8
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**1.    First Transit's Contract Does Not Manifest Any Intent That First Transit Was Assuming a Direct Obligation to Transdev.**

First Transit's contract with King County includes no language that can be construed as having been intended to give Transdev a direct right of suit against First Transit for breach by First Transit of its contract with King County.  It is noteworthy that Transdev felt compelled to intentionally misrepresent these contractual terms (following Plaintiffs' lead), twisting their evident meaning, in its efforts to justify a claim against First Transit.

**a.    Section 4.5(A)(1) of the Contract**

Transdev alleges: "The Contract provides that, although Transdev Services is responsible for employing the drivers, First Transit is responsible for managing the routes, scheduling, and dispatch of the drivers, and ensuring compliance with Washington law with regard to ***driver*** rest breaks."  Transdev Answer, p. 19, § 6 (emphasis added).

The Contract actually provides:  "The Contractor is responsible for ensuring compliance with all applicable laws and regulations, including any that require that ***its*** employees be provided with periodic breaks during a work day."  Martell Decl., Ex. 2, § 4.5(A)(1) (p. 46) (emphasis added).

First Transit cannot have breached the second clause (beginning with "including") in relation to the drivers because, as admitted by Transdev, the drivers were not First Transit's employees.  Rather, as shown by the contracts, First Transit's employees were the reservationists, schedulers, dispatchers, passenger service staff, quality assurance staff, and technical and support staff.  Martell Decl., Ex. 2, § 6.1(A)(5)(a) (pp. 74-75) and § 6.3 (pp. 81-87).  Importantly, Transdev's contract with King County contains a similar provision, making ***Transdev*** responsible for ensuring that "its employees," including the drivers, "be provided with periodic breaks during a work day."  Martell Decl., Ex. 1, § 4.5(A)(1) (pp. 41-42).  The initial clause, requiring that the contractors (Transdev and First Transit) ensure that their performance under the contract comply with ***all*** applicable laws, is not directed to the drivers and does not show an intent to empower Transdev to sue First Transit for a breach of that contractual undertaking.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

### b. Section 6.5(D)(1) of the Contract

Transdev alleges: "First Transit's performance obligations under the Contract include...(i) Providing dispatch coverage in order to ensure that ***Transdev Services drivers*** receive breaks and lunches." Transdev Answer, p. 19, § 5(i) (emphasis added).

The Contract actually provides: "Additionally, the C.C.-Contractor [First Transit] shall provide non-reservation coverage from 5:00 p.m. to 8:00 a.m. to process ride inquires, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to ensure that ***its*** drivers receive breaks and lunches." Martell Decl., Ex. 2, § 6.5(D)(1) (p. 89) (emphasis added).

As already shown, First Transit did not employ the Plaintiff drivers. Thus, First Transit cannot have breached this clause with respect to Transdev's drivers, because this clause requires First Transit to ensure that "its drivers" receive breaks. There is also no allegation that First Transit breached the actual obligation imposed on First Transit by this sentence, which was to "provide non-reservation coverage from 5:00 p.m. to 8:00 a.m."

### c. Section 6.5(D)(12) of the Contract

Transdev alleges: "First Transit's performance obligations under the Contract include...(h) Developing a plan that ensures Transdev Services drivers receive breaks and lunches." Transdev Answer, p. 19, § 5(h).

The Contract actually provides: "The C.C.-Contractor [First Transit] shall work with S.P.-Contractors [Transdev] to develop a plan to ensure driver breaks and lunches ***that shall have the least impact on the provision of service.*** This plan shall conform to applicable law." Martell Decl., Ex. 2, § 6.5(D)(12) (p. 89) (emphasis added).

The first sentence obligated First Transit to "work with" Transdev to develop a plan for driver breaks that had the least impact on the provision of services. The Cross-Claim does not allege a breach of that sentence for the reason that it required driver breaks to be minimized, not provided. The second sentence, stating that the breaks plan "shall conform to applicable law," is not an undertaking to provide rest breaks to drivers, but rather is merely an acknowledgement by King County that the obligation it was imposing on First Transit to minimize the impact of driver breaks did not require First Transit to ignore Transdev's obligation to provide legally-required breaks to its employees.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS - 10**
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

In the alternative, to the extent the second sentence is viewed as a contractual undertaking to provide breaks rather than (properly) as a mere limitation on First Transit's obligation to minimize breaks, the second sentence is simply another undertaking by First Transit to execute its contractual obligations to King County in a lawful fashion. This again does not show an intent to empower a third party, Transdev, to sue First Transit for a breach of that contractual undertaking. A promise given by one contracting party to the other to comply with the law in its discharge of its contractual duties does not confer a right to sue on third parties. Such a promise in a contract does not create an intended third-party beneficiary. *See, e.g., Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826 (Minn. 2012) (holding that employees were not intended third-party beneficiaries of contract between City and their employer that required the employer to pay prevailing wages);[2] *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011) (holding that health care facilities were not intended third-party beneficiaries of pricing agreements between pharmaceutical manufacturers and the federal government); *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1479-80 (7th Cir. 1985) (holding that employee of a government contractor was not intended third-party beneficiary of affirmative-action clauses required by the Rehabilitation Act).

### 1.    Under Controlling Washington Supreme Court Precedent, Transdev Is Not An Intended Third-Party Beneficiary of the Contract.

Transdev's third-party beneficiary contract claim is viable only if the contract between First Transit and King County shows that the parties intended that First Transit would assume a ***direct obligation*** to Transdev. "Creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Del Guzzi Const. Co., Inc. v. Global Northwest, Ltd., Inc.*, 105 Wn.2d 878, 886 (1986) (quotations and citations omitted). "Such 'intent' is not a desire or purpose to confer a benefit upon the third person, nor a desire to advance his

---

[2] Like Minnesota, Washington follows the Restatement (Second) of Contracts on intended third-party beneficiaries.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

interes." *American Pipe and Construction Company v. Harbor Construction Company*, 51

Wn.2d 258, 266, 317 P.2d 521 (1958) (quotation and citation omitted). The Court must look to

the terms of the contract to determine the intent of the parties. *Del Guzzi*, 105 Wn.2d at 887.

In *American Pipe*, the Washington Supreme Court held that the plaintiff (installation

contractor) could not sue the defendant (pipe supplier) for breach of the pipe supplier's contract

with the City of Anacortes. 51 Wn.2d at 267. Even conceding that the pipe supplier's

performance of its contract with the city would benefit the installation contractor, the court

concluded that the contract could not be "construed to confer upon the installation contractor the

right to enforce its provisions." *Id.* at 266. This was so because the pipe supplier's contract

specified the fashion by which *the city* was empowered to enforce the contract against the pipe

supplier, thereby excluding any intent that the installation contractor would have a direct right to

enforce the contract against the pipe supplier. *Id.* at 266-67. Permitting a third party to enforce

the contract would have undermined the city's contractual right to make changes to the

specifications and timelines in the contract. *Id.*

Analysis of the enforcement provisions in the contract at issue here compels the same

conclusion in this case. First Transit's contract with King County gives <u>King County</u>, not any

third parties, the right to terminate the contract and collect damages for breaches of the contract.

Martell Decl., Ex. 2, § 1.3(B) (pp. 18-19). The contract also includes an express agreement

between the parties that they will attempt to resolve any disputes first through direct discussions

or mediation, followed by arbitration. *Id.*, § 1.12 (p. 22). In the contract, First Transit warrants

to King County that its services to King County "shall in all material respects conform to the

requirements of this Contract." *Id.*, § 2.11 (p. 32). If First Transit breaches this warranty, King

County is required to provide written notice to First Transit. *Id.*, § 2.12 (p. 32). If First Transit

fails to correct the defect within thirty days, "the County, in its sole discretion, may correct the

defect itself." *Id.* The contract further provides that, if King County determines that First

Transit's work does not comply with the contract's requirements, King County may give notice

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

to First Transit. *Id.*, § 2.13 (p. 33). Within seven days, First Transit is required to provide King County with a written plan to correct the issue, and "[t]he County may reject or accept this plan at its discretion." *Id.* Thus, just as in *American Pipe*, the contract specified the fashion by which the service recipient, King County, was empowered to enforce the contract, including by providing King County with discretion as to whether and how any breaches would be corrected. As in *American Pipe*, this excludes any intent that Transdev would have a direct right to enforce the contract.

Moreover, like the city in *American Pipe*, King County retained the right to make changes to the requirements in the contract. Particularly relevant here, King County reserved the right to "adjust routes as service demands change," "change service level ranges," and "adjust the allocation of Vehicle Service Hours of any or all Service Providers higher or lower." *Id.*, §§ 4.5(A)(4), 4.5(B)(2), and 4.5(B)(4) (p. 46); § 6.2(A)(1)-(2) (p. 78). Just as in *American Pipe*, these provisions exclude any intent that Transdev would have a direct right to enforce the contract, because such a right would conflict with King County's rights under the contract.

Another analogous Washington Supreme Court decision is *Del Guzzi*, which also held that the plaintiff was not an intended third-party beneficiary. Clallam County entered into a contract with an engineering firm (Kennedy) to plan and supervise a construction project. The County also entered into a contract with a construction company (Del Guzzi), who contracted with a subcontractor (Global) to complete a portion of the work. Del Guzzi later filed suit against Global because of costs it incurred in assisting Global to complete some of its work. Global counter-claimed for cost overruns, alleging that it was a third-party beneficiary of the County/Del Guzzi contract because the contract required minority participation in order to receive federal funding. Global also filed a third-party action against the County and Kennedy, alleging that they breached a contractual duty to provide suitable specifications and oversight for the project as required by their contract. *Id.* at 880-81. The Court held that Global was not an intended third-party beneficiary of either contract because the parties did not manifest an intent

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1  that the County or Kennedy would assume a direct obligation to Global.  Instead, any benefits

2  derived by Global from the contracts were incidental.  *Id.* at 887.

3         Similar to the contractors in *Del Guzzi*, both Transdev and First Transit entered into

4  related contracts to accomplish a County project, but did not enter into a contract with each

5  other.  Like Global, the subcontractor who attempted to bring a third-party action for breach of

6  contract against parties with which it had not contracted (including Kennedy), Transdev is

7  attempting to bring a third-party action for breach of contract based on a contract to which it was

8  not a party.  First Transit (like Kennedy) separately contracted with the County, to perform

9  planning and monitoring aspects of the work, which included a promise to work with Transdev

10 to develop a plan for driver breaks (similar to Kennedy's obligation to provide specifications).

11 This plan also incidentally benefited Transdev as the employer of the drivers (similar to Global).

12 Just like *Del Guzzi*, there is nothing in First Transit's contract with King County that manifests

13 an intent to create a direct obligation to Transdev.

14        Other courts have reached the same conclusion under similar circumstances.  *See, e.g.,*

15 *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 263 (1992) (holding that patient was not third-party

16 beneficiary of doctor's employment contract wherein he promised to "provide medical services

17 with the highest degree of medical competency"); *McDonald Const. Co. v. Murray*, 5 Wn. App.

18 68, 70-71 (1971) (holding that tenant was not third-party beneficiary of contract between

19 construction company and building owner wherein construction company promised to complete

20 work within 75 calendar days).

21        Thus, based on controlling authority from the Washington Supreme Court and the intent

22 manifested in the language of the contract, Transdev is at most an incidental – not intended –

23 third-party beneficiary of First Transit's contract with King County.  There is no legal basis for

24 Transdev to enforce any alleged breach in the contract between First Transit and King County.

25

26

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**E. Any Contract that Purported to Indemnify Transdev for Its Obligation to Provide Rest Breaks Would Be Illegal and Unenforceable.**

Even if Transdev had contractual rights to enforce First Transit's contract with King County (which it does not), Transdev may not lawfully use a contract to obtain indemnity for the claims that are asserted against it in this case. This is so because any contract that purports to indemnify an employer for breaching rest break or wage obligations to its employees is unlawful and unenforceable as a matter of public policy.

In *Kilgore v. Shriners Hospitals for Children*, 190 Wn. App. 429, 360 P.3d 55 (2015), an employee sued her employer, a hospital, under the Washington Minimum Wage Act ("WMWA") for underpayment of wages. The hospital, in turn, asserted a counterclaim of breach of implied contract (implied contractual indemnity) against the employee, its former director of fiscal services, who had been responsible for administering payroll practices, claiming she was at fault for the underpayment. *Id.* at 430. The Washington court of appeals held, based on its analysis of case law under the Fair Labor Standards Act (FLSA) and the purposes of the WMWA, that the employer could not sue in contract to be indemnified for violations of the WMWA. *Id.* at 434-36. The court concluded that that "the [W]MWA's statutory goals would be undermined by diminishing the employer's compliance incentives if an employer were permitted to seek indemnity...." *Id.* at 435.

The Plaintiffs here have sued Transdev under the WMWA for alleged failures to pay wages. *Kilgore* is directly on point with regard to Transdev's effort to seek indemnification from First Transit for those claims.

*Kilgore* also precludes Transdev's effort to be indemnified for Plaintiffs' claims of breaches of the rest breaks regulation itself. The same public policy the supports the WMWA also supports the rest break regulation, which is part of Washington's "long and proud history of being a pioneer in the protection of employee rights." *Pellino*, 164 Wn. App. at 684. If Transdev could avoid the consequences of failing to provide its employees with rest breaks

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1   through a contract with a third party, then its incentive to ensure that its employees received their

2   rest breaks would be reduced.  Such a result would undermine the purpose of the rest break

3   regulation, which is to ensure that employers provide their employees with breaks.  *See Pellino*,

4   164 Wn. App. at 688-90.

5          Federal authority developed under the FLSA, which is persuasive authority when

6   interpreting Washington law, buttresses this conclusion.  Numerous courts have held that

7   employers cannot obtain contractual indemnification for their FLSA obligation to pay minimum

8   wages and overtime, whether from co-employers or third parties who are responsible for the

9   violations.  *See, e.g., Lyle v. Food Lion*, 954 F.2d 984, 987 (4th Cir.1992) (affirming dismissal of

10  employer's counterclaim and third-party complaint for contractual indemnity against manager for

11  plaintiffs' FLSA claims); *Local 1035, Int'l Brotherhood of Teamsters v. Pepsi Allied Bottlers,*

12  *Inc.*, 99 F. Supp.2d 219, 221-22 (D. Conn. 2000) (holding that indemnification clause in

13  collective bargaining contract was void to the extent it relieved employer of liability for FLSA

14  violations, and dismissing employer's counter-claim against union); *Gustafson v. Bell Atlantic*

15  *Corp.*, 171 F. Supp.2d 311, 327-28 (S.D.N.Y. 2001) (dismissing contractual claim for indemnity

16  of FLSA liability and holding that "allowing defendants to obtain indemnification from [the

17  plaintiff's former company] contradicts the policies of the FLSA").  In *Gustafson*, for example,

18  the defendants had entered into a contract with the plaintiff's former company, which contained

19  an indemnification clause and required the plaintiff's company to comply with the law.  171 F.

20  Supp. 2d at 327.  The defendants' attempts to characterize their claim as a breach of contract did

21  not disguise the true nature of their claim for indemnity, which was not permitted under the

22  FLSA.  *Id.* at 328.

23         In sum, the contractual rights that Transdev claims (which do not exist) would be illegal

24  and unenforceable in any event.  Even in a direct contract between Transdev and First Transit,

25  Transdev could not indemnify itself and sidestep the obligation to provide its employees with

26  rest breaks.  Said another way, First Transit's agreement with King County to "work with"

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1  Transdev on developing a plan for breaks does not permit Transdev to transfer to First Transit

2  the obligation that Transdev had under Washington law to provide rest breaks to its employees.

3  To the extent that drivers missed their breaks, Transdev was solely responsible for compensating

4  them as required by Washington law, and under binding precedent Transdev cannot seek

5  indemnity or contribution from First Transit.  Any such contract is illegal and unenforceable

6  under Washington law.

7  **IV.    CONCLUSION**

8         For the foregoing reasons, Transdev's Cross-Claim against First Transit should be

9  dismissed with prejudice.

11  October 24, 2016

13                                             *s/  Breanne Sheetz Martell*
                                             Daniel L. Thieme, WSBA #12855
                                             dthieme@littler.com
14                                             Breanne Sheetz Martell, WSBA #39632
                                             bsmartell@littler.com
15                                             Vanessa B.K. Lee, WSBA #46547
                                             vblee@littler.com
16                                             LITTLER MENDELSON, P.C.
                                             One Union Square
17                                             600 University Street, Suite 3200
                                             Seattle, WA  98101.3122
18                                             Phone:        206.623.3300
                                             Fax:            206.447.6965

20                                             Attorneys for Defendant
                                             FIRST TRANSIT, INC.

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - 17
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Ste. 3200, Seattle, WA 98101. On October 24, 2016, I

✘ **ELECTRONICALLY FILED** the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Toby J. Marshall, WSBA #32726<br>tmarshall@terrellmarshall.com<br>Jennifer Rust Murray, WSBA # 36983<br>jmurray@terrellmarshall.com<br>Erika L. Nusser, WSBA #40854<br>enusser@terrellmarshall.com<br>TERRELL MARSHALL LAW GROUP PLLC<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103-8869<br>Telephone:     206-816-6603<br>Facsimile:     206-319-5450<br><br>*Attorneys for Plaintiffs* | Jeffrey Needle, WSBA #6346<br>jneedle@wolfenet.com<br>LAW OFFICES OF JEFFREY L. NEEDLE<br>119 1st Avenue, Suite 200<br>Seattle, Washington 98104<br>Telephone:     206-447-1560<br>Facsimile:     206-447-1523<br><br><br><br><br><br>*Attorneys for Plaintiffs* |
| Stellman Keehnel, WSBA No. 9309<br>stellman.keehnel@dlapiper.com<br>Anthony Todaro, WSBA No. 30391<br>anthony.todaro@dlapiper.com<br>Austin Rainwater, WSBA No. 41904<br>austin.rainwater@dlapiper.com<br>DLA PIPER US LLP (WA)<br>701 Fifth Avenue, Suite 7000<br>Seattle, Washington 98104-7044<br>Tel: 206.839.4800<br>Fax: 206.839.4801<br><br>*Attorneys for Transdev Defendants* | |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on October 24, 2016, at Seattle, Washington.

*s/ Sally Swearinger*

Sally Swearinger
sswearinger@littler.com
**LITTLER MENDELSON, P.C.**

Firmwide:143368785.5 070993.1104

**FIRST TRANSIT, INC.'S MOTION TO DISMISS** - 18
**Case No. 2:15-cv-01299-RAJ**

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300