UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOWARD BERRY and DAVID BERRY, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>TRANSDEV SERVICES, INC., f/k/a VEOLIA TRANSPORTATION SERVICES INC., and TRANSDEV NORTH AMERICA, INC., f/k/a VEOLIA SERVICES, INC.; and FIRST TRANSIT, INC.,<br><br>                Defendants. | No. 2:15-cv-01299-RAJ<br><br>**DEFENDANT TRANSDEV'S OPPOSITION TO DEFENDANT FIRST TRANSIT'S MOTION TO DISMISS TRANSDEV'S CROSSCLAIM**<br><br>**NOTING DATE: NOVEMBER 18, 2016** |

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    Transdev and First Transit successfully bid for different portions of work on the same King County contract ................................................... 2

    B.    Under their identical contract with King County, the Control Center (First Transit) has responsibility for dispatching and scheduling Transdev's drivers ............................................................................ 3

    C.    Under the Contract, First Transit owes Transdev the duty to ensure Transdev's drivers receive rest breaks ................................................ 4

    D.    Transdev directs its drivers to request breaks, if not scheduled, from First Transit through the MDC .............................................................. 5

    E.    Plaintiffs allege that Transdev drivers were scheduled and dispatched in such a way that they were unable to take rest breaks ......................... 7

III.  ARGUMENTS AND AUTHORITIES ............................................................... 8

    A.    This is a Rule 12(b)(6) motion, and, as such, this Court must construe all evidence in favor of Transdev and all ambiguities against First Transit ............ 8

    B.    First Transit owes contractual duties to Transdev relative to plaintiffs' rest break claims .......................................................................... 8

         1.    The Contract's structure and execution make it such that First Transit and Transdev are in contractual privity ...................................... 9

         2.    Transdev is an intended third-party beneficiary of First Transit's contract with King County ................................................................. 10

              i.    First Transit assumes numerous direct duties to Transdev, including the duty to provide rest breaks to Transdev drivers ................................................................................. 12

              ii.   First Transit has acknowledged its duty to Transdev to ensure driver rest breaks ...................................................... 14

    C.    Enforcing First Transit's duty to ensure driver rest breaks will promote, rather than violate, public policy ................................................ 16

IV.  CONCLUSION .................................................................................................. 17

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Pipe and Construction Company v. Harbor Construction Company,*
  51 Wn.2d 258 (1958) .................................................................................. 11, 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 8

*Bell Atl. Corp. v, Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 8

*Del Guzzi Const. Co. v. Glob. Nw., Ltd., Inc.,*
  105 Wn.2d 878 (1986) ........................................................................................ 12

*Kenney v. Read,*
  100 Wn. App. 467 (2000) ..................................................................................... 9

*Kilgore v. Shriners Hosps. For Children,*
  190 Wn. App. 429 (2015) .................................................................................... 16

*Lonsdale v. Chesterfield,*
  99 Wn.2d 353 (1983) ..................................................................................... 10, 11

*MacLean Townhomes, L.L.C. v. Am. 1st Roofing & Builders Inc.,*
  133 Wn. App. 828 (2006) .................................................................................... 14

*McQuillion v. Schwarzenegger,*
  369 F.3d 1091 (9th Cir. 2004) .............................................................................. 8

*RSD AAP, LLC v. Alyeska Ocean, Inc.,*
  190 Wn. App. 305 (2015) .................................................................................... 14

*Turner v. Wexler,*
  14 Wn. App. 143 (1975) ....................................................................................... 9

*Vikingstad v. Baggott,*
  46 Wn.2d 494 (1955) .......................................................................................... 10

*Warner v. Design & Build Homes, Inc.,*
  128 Wn. App. 34 (2005) ......................................................................... 10, 12, 13

**STATUTES**

Americans with Disabilities Act .......................................................................... 1, 2

**OTHER AUTHORITIES**

Rule 12(b)(6) .............................................................................................. 7, 8, 17

TABLE OF AUTHORITIES - ii
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

Transdev Services, Inc. and Transdev North America, Inc. (collectively, "Transdev") respectfully request that the Court deny First Transit, Inc.'s Motion to Dismiss Transdev's Cross-Claim (Dkt. No. 30).

## I.    INTRODUCTION

Transdev and First Transit perform different roles under identical contracts with King County to provide paratransit services under the Americans with Disabilities Act. Transdev, as the Service Provider, is responsible for employing the paratransit drivers, while First Transit, as the Control Center, has exclusive responsibility for scheduling and dispatching Transdev's drivers, including ensuring that the drivers are able to take rest breaks during the day. When Transdev submitted its bid proposal to become King County's service provider under the contract, Transdev knew that it would have no control over dispatching and scheduling its own drivers, but agreed to give up that control in reliance on the fact that the contract requires the Control Center, First Transit, to ensure that Transdev's drivers receive rest breaks.

Over the course of the contract's term, First Transit has repeatedly affirmed in correspondence—both to King County and to Transdev—its contractual duty to ensure that drivers receive rest breaks. Now that First Transit has been added as a defendant to this lawsuit, however, First Transit takes the position that its contract does not require First Transit to schedule driver rest breaks and that, even if it did, such a duty would be unenforceable.

First Transit's position ignores the reality—and the explicit terms—of the contractual relationship between King County, Transdev, and First Transit. Not only does First Transit's contract require it to ensure that Transdev's drivers receive rest breaks, it also gives First Transit the exclusive control (and duty) to schedule and dispatch Transdev's drivers. As a result, the **only** means by which Transdev can ensure that its drivers have meaningful opportunities to take rest breaks during their workday is by enforcing First Transit's contractual duties to Transdev. If the Court dismisses Transdev's cross-claims against First Transit, Transdev and its drivers will be at the mercy of First Transit without any recourse.

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 1
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

## II.    BACKGROUND

**A.    Transdev and First Transit successfully bid for different portions of work on the same King County contract.**

On March 1, 2007, King County published a Request for Proposal ("RFP") titled "Paratransit ACCESS – Service Providers & Control Center."   (Declaration of Austin Rainwater ("Rainwater Decl."), Ex. A, RFP Cover Page.)   The purpose of the RFP was to provide access to public transportation for persons with disabilities in King County pursuant to the Americans with Disabilities Act.  The RFP consisted of three parts: "Part A – Instructions and Information about the RFP Process; Part B – Contract King County intends to enter with the selected Proposers; and Part C – Scope of Work."  (*Id.*)

First Transit submitted a bid proposal to become the Control Center Contractor while, at the same time, Transdev submitted a proposal to become a Service Provider Contractor. (Rainwater Decl., Ex. B, Submittal List.)  On August 26, 2008, King County published its bid proposal results which, effective August 1, 2008, awarded First Transit the Control Center work and awarded Transdev—formerly Veolia Transportation Services, Inc.—the Service Provider work.[1]

The RFP published by King County included the contract that would govern <u>both</u> the Control Center and Service Provider (containing the scope of work for both within the same contract), and which both First Transit and Transdev ultimately executed (albeit separately) with King County.  In reliance upon the identical terms of the contract that would bind both the Service Provider and the Control Center to their respective scopes of work—and in reliance upon the duties that each would owe to one another—Transdev executed its contract with King County to become the Service Provider.  (Declaration of Dan Bartz ¶¶ 4, 8 ("Bartz Decl.").)

---

[1] Solid Ground, not a party to this lawsuit, also made a successful bid as a Service Provider Contractor, but it generally services different territory than Transdev.  (*See* Rainwater Decl., Ex. B, Submittal List.)

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 2
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**B.      Under their identical contract with King County, the Control Center (First Transit) has responsibility for dispatching and scheduling Transdev's drivers.**

King County accepted Transdev and First Transit's respective bids, designating First Transit as the Control Center and Transdev as the Service Provider.  As contemplated by the parties, the provisions in the contract King County executed with Transdev were identical to the provisions in the contract it executed with First Transit, the only exception being that the bid proposals are attached and incorporated at the end of each party's contract.  *Compare* Dkt. No. 31-2, First Transit Contract, *with* Dkt. No. 31-1, Transdev Contract (collectively referred to as the "Contract").  The fact that the contracts' terms were identical was crucial to both the bid process and to the parties' respective performance of their duties.  Because the contracts' terms are identical, Transdev (and First Transit) were able to rely on their respective scopes of work and bid based on the explicit duties the parties owe to one another.  (Bartz Decl. ¶ 7.)

Section 4 of the Contract, the "Scope of Work Paratransit Access," sets forth the following "Service Model," whereby the Control Center (First Transit) has complete control over scheduling and dispatching drivers, while the Service Provider (Transdev) is required to provide the drivers to drive the routes:

> The Paratransit Control Center will be the point of public contact for ride screening, ride scheduling, and dispatching. The Service Providers shall receive trip schedules from the Control Center on a daily basis and shall send out vehicles with drivers to provide the trips. The Service Provider, Control Center dispatch, and the drivers shall be in contact via the Mobile Data Computer (MDC) and will be able to have radio communication when necessary. The Service Provider shall keep the Control Center informed of vehicle availability.

> The Control Center shall use TRAPEZE, (a computerized scheduling, dispatch and information system) to develop schedules for vehicles and riders. The Control Center's reservations, scheduling and dispatching staff shall determine the specific ride for each eligible rider, which specific route a rider shall ride on and which Service Provider shall provide the trip.

Dkt. No. 31-2, First Transit Contract § 4.1(B)(1)–(2).

This allocation of responsibility between First Transit and Transdev is central to understanding the contractual relationship between the parties.  Although Transdev is

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 3
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

responsible for employing the drivers, Transdev does not have the authority under the Contract to set schedules or dispatch those drivers during their work day (and therefore cannot, for example, adjust a driver's route in order to allow a driver to take his or her rest break). Because Transdev has no control over scheduling and dispatching its drivers, however, the Contract requires that First Transit assume those obligations to Transdev, including the duty to ensure that Transdev's drivers receive rest breaks.

**C.    Under the Contract, First Transit owes Transdev the duty to ensure Transdev's drivers receive rest breaks.**

Section 6 of the Contract, "Scope of Work - Control Center," sets forth First Transit's responsibilities, including its duties to Transdev. For example, the Contract requires First Transit to communicate daily with Transdev and schedule Transdev's drivers with sufficient notice, as follows:

> Coordinate ACCESS with S.P.-Contractors [Transdev] and other transportation programs: Plan and implement programs, which improve service or efficiency through increased coordination with other transportation services. Dkt. No. 31-2, First Transit Contract § 6.1(B)(3)(b).

> Communicate daily with the S.P.-Contractors [Transdev] regarding vehicle and driver availability, schedule adherence and any other operational issues. *Id.* § 6.1(B)(3)(e).

> Coordinate the flow of information from dispatch to the S.P.-Contractors [Transdev] and back to the C.C.-Contractor [First Transit] management. *Id.* § 6.1(B)(3)(f).

> Transmit vehicle shift schedules for the next day to the S.P.-Contractors [Transdev], not later than 7 p.m., giving sufficient time for operators to schedule vehicles and drivers. Actual manifests shall be transmitted as appropriate for the start of the shift. *Id.* § 6.2(B).

> The C.C.-Contractor [First Transit] shall schedule rides in a manner that ensures that the S.P.-Contractor [Transdev] is able to deliver riders to their destinations within the established time frame arranged when the ride was requested. *Id.* § 6.5(D)(10).

First Transit's duties to Transdev also extend to supporting the drivers employed by Transdev, including developing a plan to ensure driver rest breaks:

> The C.C.-Contractor shall ensure that its scheduling personnel are assigned to meet service level requirements and that its scheduling personnel meet the following performance standards: ... Incorporate feedback from drivers, dispatch and reservationists to continually improve service and productivity. (*Id.* § 6.3(B)(4).)

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 4
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

Regularly attend the Service Provider's monthly driver's meeting to assist drivers in solving service problems. (*Id.* § 6.3(C)(7).)

The C.C.-Contractor [First Transit] shall work with S.P.-Contractors [Transdev] to develop a plan to ensure driver breaks and lunches that shall have the least impact on the provision of service. This plan shall conform to applicable law. (*Id.* § 6.5(D)(12).)

Finally, and most importantly for purposes of this motion, First Transit is required to provide dispatch coverage to ensure that Transdev drivers receive rest breaks on the day of service: "**The C.C.-Contractor [First Transit] shall provide dispatch coverage for all hours of transportation service operation**. Additionally, the **C.C.-Contractor [First Transit] shall provide non-reservation coverage** from 5:00 p.m. to 8:00 a. m. to process ride inquiries, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to **ensure that its drivers receive breaks and lunches**." (*Id.* § 6.5(D)(1) (emphasis added).)

### D. Transdev directs its drivers to request breaks, if not scheduled, from First Transit through the MDC.

Transdev drivers are at the mercy of First Transit when it comes to getting rest breaks. For the entirety of the putative class period, Transdev had told its drivers that, in the event no break is scheduled or reasonably available during daily downtime, then they should *first*, request a rest break through the MDC,[2] and *second*, if one is not given, call Transdev operators who will then call First Transit and verbally demand a break. (Declaration of Leiite Lemalu ¶ 3 ("Lemalu Decl.").) That practice was reduced to a formal policy, which policy has been in place for a significant portion of the putative class period. The current policy instructs drivers to review their daily manifests prior to departing on their route so that they are aware of and "know the scheduled times of all rest and meal breaks." (Declaration of Erik Zandhuis ("Zandhuis Decl.") Ex. C, Transdev Meal and Rest Break Verification Policy at 1.) Transdev drivers are further instructed that, if they encounter "a problem or service demands [that]

---

[2] Indeed, there is a **preset button** for requesting rest breaks that a driver can press and instantly communicate that message to First Transit's dispatchers. (Lemalu Decl. ¶ 3.)

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 5
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

require him or her to miss a scheduled rest or meal break, the Driver must immediately notify the Control Center Dispatcher [First Transit] of the missed rest or meal break. If the dispatcher fails to immediately resolve the problem, the Driver must immediately notify his or her immediate supervisor or Window Dispatcher. If a break was missed, Drivers are expected to identify possible downtime during the day during which he or she could take a rest or meal break, and with approval from the Control Center Dispatcher [First Transit], take a rest or meal break." (*Id.* at 2.)

Although Transdev drivers are instructed to contact their supervisor if they do not receive a break from First Transit, because Transdev does not have authority to make dispatching or scheduling changes, the Transdev supervisor's only recourse is to contact First Transit in a further attempt to ensure the driver receives a break. (Lemalu Decl.¶ 4.) By way of illustration, on November 20, 2015, one of Transdev's operations managers, Leiite Lemalu, sent an email to First Transit's Operations Manager, Donna Sansoterra, regarding concerns raised by a driver regarding her rest breaks. Mr. Lemalu states in his email that "I have instructed our team [Transdev] to watch Mary's route daily and do all we can to make sure she is scheduled for her 2 breaks," but he also notes that "**[w]hen she calls us [Transdev] our only option is to reach out to your team [First Transit] for help on her breaks or lunch** and that is usually an odd conversation since we are telling you what she had told you already." (Zandhuis Decl., Ex. D, Nov. 20–23, 2015 Email Correspondence.)

A few weeks later, on December 3, 2015, Ms. Sansoterra (First Transit) sent an email to Mr. Lemalu (Transdev) acknowledging the complaints raised by Transdev's drivers and First Transit's responsibility to correct any rest break violations:

> We have drivers complaining about where their breaks are and asking dispatch [First Transit] to move them if it will make them late for a client. That is not always possible. We all know how this works. While dispatch's responsibility is to monitor the routes and do what we can to keep them on time, it is not always possible. . . . We cannot always have every route on time and running beautifully. . . . **Drivers need to take their rest periods where they are scheduled. If they are in violation it is our [First Transit's] responsibility to correct**, but if they refuse to take or

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 6
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1    ask for it to be moved, that is out of our control.

2  (Zandhuis Decl., Ex. E, December 3, 2015 Email Correspondence.)

3       In sum, because Transdev does not have dispatching or scheduling control over its

4  drivers, Transdev must rely upon First Transit to fulfill its contractual duty to ensure driver rest

5  breaks, a duty that First Transit has acknowledged.

6       **E.    Plaintiffs allege that Transdev drivers were scheduled and dispatched in**
          **such a way that they were unable to take rest breaks.**

7       Plaintiffs' claims against Transdev are predicated on allegations that the dispatching

8  and scheduling of Transdev's drivers' routes made it impossible for them to take rest breaks

9  during their work day.  Specifically, Plaintiffs allege that "Defendants did not schedule rest

10 breaks for any of their Drivers before March 1, 2015" and that, "[a]s a result of Defendants'

11 policies and practices and the extremely tight schedules under which they are required to

12 operate, Drivers had no opportunity to take the rest breaks to which they were entitled under

13 the law before March 1, 2015."  Dkt. No. 22, Am. Compl. ¶¶ 5.21–22.  Similarly, Plaintiffs

14 allege that "Starting March 1, 2015, Defendants began scheduling one rest break via the

15 Driver's manifest and a second rest break via the onboard computer for each Driver shift" but

16 that "[t]he first rest break is frequently scheduled to occur within the first fifteen minutes of the

17 work day, and the second rest break is frequently scheduled to occur within the last fifteen

18 minutes of the work day."  *Id.* ¶¶ 5.24–25.

19      In sum, Plaintiffs allege that they were not scheduled or dispatched in such a way that

20 allowed them the opportunity to take rest breaks while driving their routes.  Because First

21 Transit has exclusive control over scheduling and dispatching of Transdev's drivers—and the

22 duty to Transdev to ensure that its drivers receive rest breaks—Transdev filed its cross-claim

23 against First Transit for breach of contract (either in privity or, alternatively, as a third-party

24 beneficiary).  That cross-claim is valid and should not be dismissed by way of Rule 12(b)(6).

25

26

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 7
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

## III.    ARGUMENTS AND AUTHORITIES

In its crossclaim, Transdev seeks to enforce First Transit's contractual duties to ensure driver rest breaks on two alternative theories of liability.  <u>First</u>, because the contractual framework established by King County with respect to First Transit and Transdev establishes privity between the parties, the Court may construe both contracts as a single contractual relationship.  <u>Second</u>, and in the alternative, Transdev is an intended third-party beneficiary of the contract between First Transit and King County.   Under either theory, First Transit has assumed the contractual responsibility to schedule and dispatch Transdev's drivers and to ensure that those drivers receive rest breaks.  Because Transdev has, conversely, surrendered the right to dispatch and schedule its drivers, First Transit has the exclusive control over—and duty to provide—the driver rest breaks that are the subject of this lawsuit.

**A.    This is a Rule 12(b)(6) motion, and, as such, this Court must construe all evidence in favor of Transdev and all ambiguities against First Transit.**

To avoid dismissal under Rule 12(b)(6), a plaintiff must aver in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Furthermore, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts . . . ."  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (internal quotation marks omitted).

First Transit had a duty to schedule breaks for Transdev drivers, and there is evidence that, to the extent breaks were missed, First Transit may have breached that duty.  Dismissal at this early stage – where *all* inferences must be read in Transdev's favor – is inappropriate.

**B.    First Transit owes contractual duties to Transdev relative to plaintiffs' rest break claims.**

The unusual contractual framework established by King County required contractors to

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 8
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

bid on different portions of work—as either a Control Center or a Service Provider—within the same contract. Whether that contractual relationship is characterized as a single contract between three parties or as two separate contracts, First Transit nevertheless owes contractual duties to First Transit (either as a direct party in privity or a third-party beneficiary).

### 1. The Contract's structure and execution make it such that First Transit and Transdev are in contractual privity.

The RFP published by King County for its paratransit service program contained a single contract setting forth the scope of work for both the Control Center and the Service Provider. Although it is true that King County executed its paratransit contract with First Transit and Transdev as two separate instruments, they may be construed as one contract for all intents and purposes because (i) their terms are identical, (ii) they were executed during the same time period, (iii) they relate to the same subject matter, and (iv) they were executed as part of the same transaction.

"Instruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract, even though they do not refer to one another, or even though they are not executed between the same parties." *Turner v. Wexler*, 14 Wn. App. 143, 146 (1975) (emphasis added). *See also Kenney v. Read*, 100 Wn. App. 467, 474 (2000) ("When several instruments are made as part of one transaction, they will be read together and construed with reference to each other. This is true even when the instruments do not refer to each other and when the instruments are not executed by the same parties.") (quotation marks and internal citations omitted).

In this case, all elements of the standard set forth in *Turner* have been satisfied. First, the instruments King County executed with both First Transit and Transdev were undoubtedly part of the same transaction because they resulted from the same RFP for a single contract. Second, the instruments relate to the same subject matters because they are identical. And third, the instruments were executed and became effective during the same period. *Compare* Dkt. No. 31-1, Transdev Contract (August 1, 2008 contract start date), *with* Dkt. No. 31-2, First

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 9
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

Transit Contract (August 2, 2008 contract start date).  The Court may therefore treat the instruments executed between King County, First Transit, and Transdev as part of the same contract for purposes of determining the parties' rights to one another.

**2.    Transdev is an intended third-party beneficiary of First Transit's contract with King County.**

Even if this Court concludes the parties are not in privity, Transdev fits precisely within the definition of a third-party beneficiary to the contract between First Transit and King County.  "A third-party beneficiary contract exists when the contracting parties, at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary. The test of intent is an objective one: Whether performance under the contract necessarily and directly benefits the third party." *Warner v. Design & Build Homes, Inc.*, 128 Wn. App. 34, 43 (2005).  In determining the parties' intent, the Washington Supreme Court has instructed that "[s]o long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded . . . not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. In short, the motive, purpose, or desire of the parties is a quite different thing from their intention." *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361–62 (1983) (quoting *Vikingstad v. Baggott*, 46 Wn.2d 494, 497 (1955)).

The facts of *Lonsdale* are instructive.  There, a real estate developer (Chesterfield) sold residential lots to investors and promised that it would install a water system on each plat of land.  *Id.* at 355.  Chesterfield subsequently contracted with Sansaria to install the water systems for the investors.  *Id.* at 355–56.  When Sansaria failed to install the water systems, the investors sued Chesterfield but, because Chesterfield had been dissolved in the interim, the investors' only path to recovery was against Sansaria by asserting that they were third-party beneficiaries to the contract between Chesterfield and Sansaria.  *Id.* at 360.  In concluding that the investors were third-party beneficiaries to Chesterfield's contract with Sansaria, the *Lonsdale* court held that "the contract necessarily required Sansaria, as the promisor, to confer

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 10
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

a benefit upon petitioners. Under the terms of the contract, Sansaria could not fully perform its promise to install the water system without directly benefitting the petitioners as deeded owners of the lots. Petitioners were thus intended third party beneficiaries of the performance due under the contract." *Id.* at 362-63.

Transdev is similarly a third-party beneficiary to the contract between King County and First Transit because First Transit cannot fulfill its duties under that contract without conferring numerous direct benefits to Transdev. Specifically, First Transit's obligation to ensure Transdev's drivers receive rest breaks is a direct benefit conferred upon Transdev and which is a benefit contemplated by the fact that Transdev does not have control over the scheduling and dispatching of its own drivers and therefore cannot otherwise ensure that they have opportunities for rest breaks.

First Transit attempts to analogize to this dispute to the facts in *American Pipe and Construction Company v. Harbor Construction Company*, 51 Wn.2d 258 (1958), a construction case that is completely distinguishable from these facts. In *American Pipe*, the City of Anacortes contracted with one party to supply pipe to the city for a pipeline (the pipe supplier) and another party to install the pipeline for the city (the pipe installer). Contrary to First Transit's convoluted explanation of that case, the Washington Supreme Court held that the pipe installer was not a third-party beneficiary to the pipe supplier's contract with the City for the simple reason that "[n]owhere in this contract does the pipe supplier assume any obligation to the installation contractor . . . ." *Am. Pipe & Const. Co. v. Harbor Const. Co.*, 51 Wn.2d 258, 267 (1957). In other words, the pipe supplier's contract with the city did not contain any clause or provision requiring the pipe supplier to perform any duty for the pipe installer.[3]

---

[3] As an additional basis for finding no third-party beneficiary status, the Court noted that the pipe installer also could not enforce any purported time for delivery of the pipe for the reason that the city's contract with the pipe installer contained a clause permitting the delivery period to be altered by the City, and that any attempted enforcement by the pipe installer would therefore interfere with the city's rights under the contract. That fact also is distinguishable from the present case because, unlike in *American Pipe*, First Transit's contract with King County does not contain any clause permitting King County to waive the requirement that First Transit ensure Transdev's drivers receive rest breaks.

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 11
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

First Transit also argues that this lawsuit is analogous to another distinguishable construction contract case, *Del Guzzi Const. Co. v. Glob. Nw., Ltd., Inc.*, 105 Wn.2d 878 (1986). In *Del Guzzi*, Clallam County contracted with an engineering firm (Kennedy) to design, plan, and supervise construction of a sewage system and separately contracted with a general contractor (Del Guzzi) to perform the construction, and Del Guzzi in turn entered a contract with a subcontractor (Global). *Id.* at 880. When Del Guzzi sued Global for damages allegedly resulting from having to complete a portion of Global's work, Global filed a third-party action against the County and Kennedy, alleging that Global was a third-party beneficiary to the County's contracts with Kennedy and Del Guzzi. *Id.* at 881. Similar to *American Pipe*, the Washington Supreme Court held that Global was not a third-party beneficiary to either contract because nothing in those contracts indicated any intent of the parties to assume a direct obligation to Del Guzzi. *See id.* at 887, 719 P.2d 120, 126 (1986) ("Kennedy's obligations ran exclusively to the County and any benefits derived by Global from this contract are incidental."); *id.* ("As for the construction contract between the County and Del Guzzi, nothing reveals an intent on the part of the County to assume a direct obligation to Global.") Just as in *American Pipe*, the facts of *Del Guzzi* are readily distinguishable from this case because nothing in the contracts in those cases created any direct obligation to a third party. *Del Guzzi* is distinguishable for the additional reason that, "[i]In the construction context, the prevailing rule is that a property owner is generally not a third-party beneficiary of a contract between the general contractor and a subcontractor." *Warner v. Design & Build Homes, Inc.*, 128 Wn. App. 34, 43 (2005). Unlike *Del Guzzi*, this lawsuit is not a construction dispute, and Transdev is not a property owner attempting to benefit from a contract between a contractor and subcontractor.

### i. First Transit assumes numerous direct duties to Transdev, including the duty to provide rest breaks to Transdev drivers.

Here, in contrast with *American Pipe* and *Del Guzzi*, First Transit has assumed numerous **direct and explicit** obligations to Transdev. For example, First Transit has promised that it will:

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 12
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

Coordinate ACCESS with S.P.-Contractors [Transdev] and other transportation programs: Plan and implement programs, which improve service or efficiency through increased coordination with other transportation services. Dkt. No. 31-2, First Transit Contract § 6.1(B)(3)(b).

Communicate daily with the S.P.-Contractors [Transdev] regarding vehicle and driver availability, schedule adherence and any other operational issues. *Id.* § 6.1(B)(3)(e).

Coordinate the flow of information from dispatch to the S.P.-Contractors [Transdev] and back to the C.C.-Contractor [First Transit] management. *Id.* § 6.1(B)(3)(f).

Transmit vehicle shift schedules for the next day to the S.P.-Contractors [Transdev], not later than 7 p.m., giving sufficient time for operators to schedule vehicles and drivers. Actual manifests shall be transmitted as appropriate for the start of the shift. *Id.* § 6.2(B).

The C.C.-Contractor [First Transit] shall schedule rides in a manner that ensures that the S.P.-Contractor [Transdev] is able to deliver riders to their destinations within the established time frame arranged when the ride was requested. *Id.* § 6.5(D)(10).

The C.C.-Contractor shall ensure that its scheduling personnel are assigned to meet service level requirements and that its scheduling personnel meet the following performance standards: . . . Incorporate feedback from drivers, dispatch and reservationists to continually improve service and productivity. *Id.* § 6.3(B)(4).

Regularly attend the Service Provider's monthly driver's meeting to assist drivers in solving service problems. *Id.* § 6.3(C)(7).

In addition, and most relevant to this dispute, First Transit assumed the obligation to Transdev to ensure that its drivers receive rest breaks: "**The C.C.-Contractor [First Transit] shall provide dispatch coverage for all hours of transportation service operation**. Additionally, the C.C.-Contractor [First Transit] shall provide non-reservation coverage from 5:00 p.m. to 8:00 a.m. to process ride inquires, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to **ensure that its drivers receive breaks and lunches**." (*Id.* § 6.5(D)(1) (emphasis added).)

Faced with this explicit obligation to ensure driver rest breaks, First Transit takes the astonishing position that Section 6.5(D)(1) does not apply to drivers employed by Transdev because the phrase "its drivers" is instead a reference to First Transit's drivers. First Transit Opp. at 10 ("First Transit cannot have breached this clause with respect to Transdev's drivers,

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 13
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

because this clause requires First Transit to ensure that 'its drivers' receive breaks.").

First Transit's argument is disingenuous. As the Control Center, ***First Transit does not employ any drivers under the terms of the Contract; that is Transdev's job***. In other words, according to First Transit, Section 6.5(D)(1) is a requirement that First Transit provide rest breaks to non-existent drivers. Such an absurd interpretation of Section 6.5(D)(1) would render it meaningless, and therefore must be rejected. "Courts may not adopt a contract interpretation that renders a term absurd or meaningless." *MacLean Townhomes, L.L.C. v. Am. 1st Roofing & Builders Inc.*, 133 Wn. App. 828, 831 (2006).

The only reasonable interpretation of the requirement that First Transit "ensure that its drivers receive breaks and lunches" is that the term "its drivers" means the drivers that First Transit schedules and dispatches throughout the day (*i.e.*, the drivers employed by Transdev).

### ii.   First Transit has acknowledged its duty to Transdev to ensure driver rest breaks.

Regardless, any ambiguity as to whether First Transit owes a duty to Transdev to ensure driver rest breaks is resolved by First Transit's repeated acknowledgements of that duty. Washington courts "follow the context rule that extrinsic evidence relating to the context in which a contract is made may be examined to determine the meaning of specific words and terms used in the contract. Extrinsic evidence includes both the contract's subject matter and objective, the circumstances surrounding contract formation, **both the parties' conduct and subsequent acts**, and the reasonableness of the parties' respective interpretations." *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wn. App. 305, 315 (2015) (quotation marks and internal citations omitted).

For example, on December 3, 2015, First Transit's Operations Manager, Donna Sansoterra, sent an email to Transdev acknowledging First Transit's responsibility to schedule driver rest breaks and asking that Transdev instruct its drivers to take the breaks at the time they are scheduled: "We have drivers complaining about where their breaks are and asking dispatch to move them if it will make them late for a client. That is not always possible. We all

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 14
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

know how this works. While dispatch's responsibility is to monitor the routes and do what we can to keep them on time, it is not always possible…. Drivers need to take their rest periods where they are scheduled. **If they are in violation it is our responsibility to correct**, but if they refuse to take or ask for it to be moved, that is out of our control." (Zandhuis Decl., Ex. E, December 3, 2015 Email Correspondence (emphasis added).)

A month later, on January 8, 2016, Ms. Sansoterra sent an email to King County acknowledging First Transit's responsibility to ensure driver rest breaks and explaining a new protocol First Transit had developed to monitor and ensure such breaks: "We think we finally have a finished product. . . . Any time a driver has a period of work more than 3 hours without a rest [break][,] a violation will show. As you can see by the percentages, **there is some work to be done in my department. I now have a useful tool to manage dispatch performance to coach/counsel [First Transit] dispatchers who are failing to get breaks in the correct spot**." (Zandhuis Decl., Ex. F, January 8, 2016 Email from First Transit (emphasis added).)

King County's communications with First Transit and Transdev further demonstrate King County's expectation that First Transit has a duty ensure that Transdev's drivers receive rest breaks. For example, on November 19, 2015, Transdev's General Manager, Erik Zandhuis, emailed King County's Administrator of Access Operations, John Rochford, to notify him as an "FYI" that a driver had been having difficulty obtaining rest breaks. In response, King County emailed First Transit's Operations manager—and copied Transdev's General Manager—to ask why that driver was apparently refused a rest break by First Transit when the driver attempted to take one:

> **John Rochford (King County)**: Donna here is a snippet from the 11/18 MDC player. It looks to me like the driver attempted to take a break in between two groups but was overruled [by First Transit]. What is the recourse?
>
> **Donna Sansoterra (First Transit)**: I interpret this as dispatch [First Transit] explaining why the break was up against lunch. Driver advised he was taking [a break] now and not with lunch and I am ok with that. It should have been moved to the proper place already.

In sum, both the contract's terms and the course of dealing between the parties makes

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 15
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

clear that First Transit, King County, and Transdev have always understood that First Transit has a duty to Transdev to ensure that its drivers receive rest breaks. First Transit's attempts to now disclaim any such duty must be rejected.

**C.    Enforcing First Transit's duty to ensure driver rest breaks will promote, rather than violate, public policy.**

In a final effort to shirk responsibility, First Transit takes the position that its contractual duty to ensure that drivers receive rest breaks is "unenforceable as a matter of public policy." First Transit Opp. at 15. First Transit argues that, because Transdev is the employer of the drivers, enforcement of First Transit's contractual duty to ensure driver rest breaks would "undermine the purpose of the rest break regulation, which is to ensure that employers provide their employees rest breaks." *Id.* at 16.

First Transit relies upon just one Washington case, *Kilgore v. Shriners Hosps. For Children*, 190 Wn. App. 429 (2015), in support of this proposition. That case is distinguishable from the facts in this case because **it involved an employer suing its own employee** for indemnity for the employee's purported failure to improperly administer payroll wages, resulting in the employer's liability under the Washington Minimum Wage Act. There, the Washington Court of Appeals concluded that "[t]hus, as with the FLSA, the MWA's statutory goals would be undermined by diminishing the employer's compliance incentives **if an employer were permitted to seek indemnity from its employees** for statutory violations." *Kilgore v. Shriners Hosps. For Children*, 190 Wash. App. 429, 435 (2015) (emphasis added).

Unlike in *Kilgore*, here, Transdev is not seeking indemnity from its own employees for their purported negligence, but rather attempting to enforce an explicit contractual duty assumed by a third party, First Transit.

Ironically, if this Court were to accept First Transit's argument and hold that First Transit's contractual duty is unenforceable, the result would be that Transdev—who has no control over driver scheduling or dispatching under the Contract and is wholly dependent on First Transit in that regard—would have no means to ensure that its drivers receive rest breaks.

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 16
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

As a result, Transdev could be exposed to open-ended liability and will be left without any means to ensure that its drivers receive rest breaks. Meanwhile, First Transit would be incentivized to increase its own profits by scheduling drivers to work through breaks.

To be clear, Transdev admits that it has the statutory responsibility to provide its employees opportunities to take rest breaks. But Transdev's responsibility to its employees is not mutually exclusive with First Transit also owing a contractual duty to Transdev to ensure that the schedules it creates afford drivers ample opportunity to take their rest breaks.

## IV.   CONCLUSION

This very unusual contractual framework places Transdev in the uneasy spot of having to rely on First Transit to provide Transdev's drivers with adequate break time. First Transit's motion – a Rule 12(b)(6) motion – should be denied because First Transit does owe duties to Transdev relative to scheduling driver rest breaks. Indeed, there is <u>evidence</u> (and Transdev expects discovery will yield far more) of First Transit acknowledging this responsibility and of a practice wherein drivers are asked to the MDC device to request breaks *from First Transit*. Thus, dismissal on a Rule 12(b)(6) motion, before First Transit has produced a single document or provided a single witness for deposition, is not warranted.

The motion to dismiss Transdev's crossclaim should be dismissed.

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 17
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1 | RESPECTFULLY SUBMITTED this 14th day of November, 2016.

2 | DLA PIPER LLP (US)

3 | *s/ Stellman Keehnel*

4 | Stellman Keehnel, WSBA No. 9309
*s/ Anthony Todaro*

5 | Anthony Todaro, WSBA No. 30391
*s/ Austin Rainwater*

6 | Austin Rainwater, WSBA No. 41904

7 | 701 Fifth Avenue, Suite 7000
Seattle, Washington  98104-7044

8 | Tel:  206.839.4800
Fax:  206.839.4801

9 | E-mail:  stellman.keehnel@dlapiper.com
E-mail:  anthony.todaro@dlapiper.com

10 | E-mail:  austin.rainwater@dlapiper.com

11 | *Attorneys for defendants*

12 | *Transdev Services, Inc. and*
*Transdev North America, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 18
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

Dated this 14th day of November, 2016.

_s/Stellman Keehnel_
Stellman Keehnel

EAST\137180794.1

TRANSDEV'S OPPOSITION TO
FIRST TRANSIT'S MOTION TO DISMISS - 19
No. 2:15-cv-01299-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800