HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOWARD BERRY and DAVID BERRY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TRANSDEV SERVICES, INC., *et al.*,

Defendants.

Case No. C15-1299-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant First Transit, Inc.'s ("First Transit") Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim (Dkt. # 26), Motion to Dismiss Defendants/Third-Party Plaintiffs Transdev Services, Inc. and Transdev North America, Inc.'s (collectively, "Transdev") Cross-Claim for Failure to State a Claim (Dkt. # 30), and Motion for Protective Order Staying Discovery as to First Transit (Dkt. # 39). For the reasons that follow, the Court **DENIES** First Transit's motion to dismiss Plaintiffs' complaint, **GRANTS in part** and **DENIES in part** First Transit's motion to dismiss Transdev's cross-claims, and **DENIES as moot** First Transit's motion for protective order.

## II. BACKGROUND

The Court describes the facts as Plaintiffs Howard Berry and David Berry allege

ORDER – 1

them in their First Amended Class Action Complaint, Dkt. # 22 ("Am. Compl."), and as Transdev alleges them in its Answer to First Amended Complaint and Cross-Claim, Dkt. # 25 ("Cross-Claim"), suggesting no opinion on whether these allegations will prove true. The Court cites the numbered paragraphs of the complaint using "¶" symbols.

### A. Plaintiffs' Complaint

Plaintiffs allege as follows. Under separate contracts with King County Metro, Transdev and First Transit collaborate to provide paratransit services for disabled King County residents. Am. Compl. ¶ 1.1. Transdev is responsible for hiring and deploying the drivers. First Transit develops schedules and routes. ¶ 5.7. Drivers are required to communicate with First Transit to stay apprised of scheduling and route changes. ¶ 5.9.

To schedule a ride, a disabled King County resident must call a reservation line operated by First Transit. ¶ 5.15. First Transit then schedules a driver to arrive within a thirty-minute window. *Id.* At the beginning of their shift, drivers receive a manifest identifying passengers, their locations, and their desired pickup times. ¶ 5.18.

Before March 1, 2015, Transdev and First Transit did not schedule breaks for their drivers. ¶ 5.21. Because of their demanding schedules, the drivers had no opportunity to take breaks. ¶ 5.22. Although the drivers complained, Transdev and First Transit ignored their complaints. ¶ 5.23.

Since March 1, 2015, Transdev and First Transit have scheduled rest breaks, but in a manner that renders those breaks meaningless. The first break is typically scheduled for the first fifteen minutes of a driver's shift, while the second is scheduled for the last fifteen minutes. ¶ 5.25. Scheduling breaks during these times precludes drivers from taking them. ¶ 5.26. The drivers have complained, but to no avail. ¶ 5.27.

Plaintiffs are drivers for Transdev and First Transit. On July 14, 2015, they filed the instant action against Transdev in King County Superior Court. Dkt. # 1 at 13. Transdev removed the action to this Court. *Id.* at 1. Plaintiffs then amended their complaint to add First Transit as a defendant. Dkt. # 22. They allege five causes of

ORDER – 2

action: (1) failure to provide rest breaks in violation of the Industrial Welfare Act ("IWA"), chapter 49.12 RCW, and WAC 296-126-092; (2) payment of wages less than entitled in violation of the Minimum Wage Act ("MWA"), RCW 49.46.090; (3) failure to pay overtime in violation of the MWA, RCW 49.46.130; (4) breach of contract against Transdev; (5) breach of contract against First Transit; and (6) willful refusal to pay wages in violation of the Wage Rebate Act ("WRA"), RCW 49.52.050. Am. Compl. ¶¶ 6.1-11.9.

First Transit moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. # 26. Plaintiffs oppose the motion. Dkt. # 29.

### B. Transdev's Cross-Claim

Transdev alleges as follows. Although Transdev is responsible for employing and deploying the drivers, First Transit is exclusively responsible for all scheduling, route management, driver dispatch, and rest break compliance. Cross-Claim ¶¶ 4-6. Accordingly, the ability of drivers to take rest breaks is wholly dependent upon First Transit's performance of its contractual obligations. ¶ 6.

On this basis, Transdev alleges two causes of action against First Transit: (1) breach of contract; and (2) if a breach of contract claim cannot be sustained for lack of contractual privity between Transdev and First Transit, a claim premised on Transdev's status as a third-party beneficiary to the contract between First Transit and King County Metro. ¶¶ 7-18.

First Transit moves to dismiss Transdev's cross-claim under Rule 12(b)(6). Dkt. # 30. Transdev opposes the motion. Dkt. # 33.

### III. LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504

ORDER – 3

F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When resolving a motion to dismiss, a court typically cannot consider evidence beyond the four corners of the complaint. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

At the outset, the Court finds that Plaintiffs and Transdev allege the contents of the contract between King County Metro and First Transit, Am. Compl. ¶¶ 5.1-5.5, Dkt. # 27-2 (First Transit Contract), and the contract between King County Metro and Transdev, Cross-Claim ¶¶ 4-6, Dkt. # 27-1 (Transdev Contract). Accordingly, these contracts are incorporated by reference into Plaintiffs' complaint and Transdev's cross-claim and may be considered by the Court in resolving the instant motions. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("[C]ourts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (brackets omitted)); *Ritchie*, 342 F.3d at 908.

In its motions, First Transit requests dismissal under Rule 12(b)(6) of all claims

ORDER – 4

brought against it by Plaintiffs in their amended complaint and by Transdev in its cross-claim. The Court will address each motion as follows.

### A. First Transit's Motion to Dismiss Plaintiffs' Complaint

#### i. Joint Employment as a Basis for Plaintiffs' State Law Claims

Plaintiffs allege that, by depriving them of rest and lunch breaks, First Transit violated the IWA, chapter 49.12 RCW, the MWA, chapter 49.46 RCW, and the WRA, RCW 49.52.050, *et seq.* Each of these claims is premised, at least in part, on WAC 296-126-092, which sets forth the requirements under which employers are required to provide rest and lunch breaks.

First Transit advances numerous, lengthy arguments for why it believes Plaintiffs have failed to state a claim for relief under these statutes. Primarily, First Transit attacks the viability of Plaintiffs' claims on the basis that they cannot allege their claims under the joint employment doctrine. Because Plaintiffs were not directly employed by First Transit, they rely on this doctrine to sustain their statutory claims.

The joint employer doctrine recognizes that the practical realities of an employee's occupation may be such that he or she is, in effect, employed by more than one entity. *See Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997). The doctrine derives, in large part, from the Fair Labor Standards Act of 1938 ("FLSA"). *Id.* at 639. The FLSA's "definition of 'employ' is far broader than that in common law and 'encompasses working relationships, which prior to the FLSA, were not deemed to fall within an employer-employee category.'" *Becerra v. Expert Janitorial, LLC*, 332 P.3d 415, 420 (Wash. 2014) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003) (brackets and internal quotation marks omitted).

The Washington State Supreme Court has expressly adopted the FLSA joint employment doctrine in the context of claims brought under the MWA, chapter 49.46 RCW. *Becerra*, 332 P.3d at 417. In adopting the joint employer doctrine, the court explained in a footnote that:

ORDER – 5

> We note that we are not asked to review the subcontractor's characterization of the plaintiffs as independent contractors. Whether an employee is in fact an independent contractor is determined under a separate analysis. The joint employment test we articulate today is designed to determine obligations under the minimum wage act and does not otherwise govern a worker's employment status or employer's obligations.

*Id.* at 421 n.6 (emphasis added). According to First Transit, this footnote means that Plaintiffs can pursue a theory of joint employment only as to their MWA claim and not as to their claims under the IWA or the WRA.

The Court disagrees with First Transit's interpretation of this footnote from the *Becerra* decision. A review of the Washington State Supreme Court's jurisprudence interpreting the MWA, IWA, and WRA shows that these statutes are closely connected, especially when interpreting the rest break regulation at issue in this case, WAC 296-126-092. For instance, the court has held that violating WAC 296-126-092, a regulation promulgated under the IWA, can give rise to a violation of the MWA. *Washington State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 287 P.3d 516, 520 n.1 (Wash. 2012). That is because the IWA and the MWA are "two statutory schemes [that] often work in concert." *Id.* The court has reached a similar holding with respect to the WRA. *Wingert v. Yellow Freight Sys., Inc.*, 50 P.3d 256, 260 (Wash. 2002). In *Wingert*, the court determined that a violation of the same regulation, WAC 296-126-092, was a basis for awarding damages under the WRA. *Id.*; *see also Champagne v. Thurston Cty.*, 178 P.3d 936, 943 n.9 (Wash. 2008) ("[In *Wingert*,] we determined that a violation of WAC 296-126-092 relating to rest periods constituted a basis to award damages under the WRA. However, the WRA is not included as statutory authority for WAC 296-126-092. Instead, authority for the rule is found in [the IWA,] chapter 49.12 RCW."). Given these similarities, the Court does not believe that the Washington State Supreme Court would allow a joint employment theory in the MWA context, yet prohibit it in the IWA and WRA contexts. *Sprague v. Pfizer, Inc.*, No. 14-5084 RJB, 2015 WL 144330, at *3 (W.D. Wash. Jan. 12,

ORDER – 6

2015) ("In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it.").

Accordingly, the Court concludes that Plaintiffs may pursue their Washington State law statutory claims under a theory of joint employment. *See Ege v. Express Messenger Sys., Inc.*, No. C16-1167-RSL, 2017 WL 87841, at *5 (W.D. Wash. Jan. 10, 2017) (explaining that, "[i]n order to determine whether a defendant is an 'employer' for purposes of the wage and employment statutes," Washington courts apply the joint employment doctrine).

### ii. First Transit as a Joint Employer

First Transit contends that it does not, in any event, qualify as a joint employer. In Washington, whether an employer qualifies as a joint employer depends upon the "economic reality" test. *Becerra*, 332 P.3d at 420-21. To apply the economic reality test, courts consider thirteen non-exclusive factors; five are "regulatory" and eight derive from "common law." *Id.* at 421. The regulatory factors are:

> (A) The nature and degree of control of the workers; (B) The degree of supervision, direct or indirect, of the work; (C) The power to determine the pay rates or the methods of payment of the workers; (D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (E) Preparation of payroll and the payment of wages.

*Id.* (quoting *Torres-Lopez*, 111 F.3d at 639-40). The common law factors are:

> (1) whether the work was a specialty job on the production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (3) whether the premises and equipment of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another; (5) whether the work was piecework and not work that required initiative, judgment or foresight; (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill; (7) whether there was permanence in the working relationship; and (8) whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quotation marks, citations, and brackets omitted). "These factors are not exclusive and are not to be applied mechanically or in a particular order." *Id.* (citing *Rutherford*

ORDER – 7

*Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) and *Zheng*, 355 F.3d at 71-72 ("The court is also free to consider any other factors it deems relevant to its assessment of the economic realities.")).

In their amended complaint, Plaintiffs allege that First Transit (1) exercises control over them by developing schedules and routes that they are required to follow; (2) supervises their work by "maintain[ing] and monitor[ing] data regarding Driver schedules, pickups, drop offs, vehicle location, breaks, and other information"; and (3) and regularly modifies their schedules, pickup routes, and break times. Am. Compl. ¶¶ 5.7-5.9. Plaintiffs further allege that their work does not require specialized skills, that they use communication equipment provided by First Transit to correspond with First Transit throughout the day, that they do not have an opportunity for profit or loss, that there is permanence in their working relationship with First Transit, and that the service they perform is integral to First Transit's business. ¶¶ 5.9-5.13. These allegations are consistent with the terms of the contract between First Transit and King County Metro. Dkt. # 27-2 at 75-91.

Assuming the truth of Plaintiffs' factual allegations and crediting all reasonable inferences, the regulatory and common law factors weigh in favor of finding that First Transit is a joint employer. Two of the five regulatory factors support a finding of joint employment because First Transit maintained substantial control over Plaintiffs and regularly supervised their work. From the moment Plaintiffs reported to work until the moment they left, First Transit dictated where they went, how they got there, and when they had to arrive. While First Transit could not modify Plaintiffs' employment status and was not responsible for setting or paying their wages, the degree of control First Transit had over Plaintiffs is sufficient to overcome the three missing regulatory factors.

Five of the eight common law factors also support a finding of joint employment. Plaintiffs extensively used First Transit's communication equipment; according to their allegations, Plaintiffs' work is not specialized; they lack any opportunity for profit or

ORDER – 8

loss; their relationship with First transit existed on a permanent basis; and First Transit cannot fulfill its contractual obligations to King County Metro unless Plaintiffs perform their integral role of transporting passengers. Based upon the totality of the circumstances, Plaintiffs have alleged sufficient facts supporting First Transit's status as a joint employer to avoid dismissal under Rule 12(b)(6).[1]

### iii. Breach of Contract Claim

Plaintiffs allege that they are third-party beneficiaries of the contract between First Transit and King County Metro and that First Transit breached this contract by failing to ensure that Plaintiffs received rest breaks. First Transit moves to dismiss this claim on the basis that Plaintiffs are not third-party beneficiaries.

"A third-party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom." *McDonald Const. Co. v. Murray*, 485 P.2d 626, 627 (Wash. Ct. App. 1971). "The right of a third party beneficiary to sue upon a contract depends, as a rule, upon whether the contract is for his direct benefit or whether his benefit under it is merely incidental, indirect or consequential." *Lonsdale v. Chesterfield*, 573 P.2d 822, 825 (Wash. Ct. App. 1978). "A third party for whose direct benefit a contract was entered into may sue for breach thereof." *Id.* Whether a party is a third-party beneficiary is a matter of contract interpretation: "a court must look to the terms of the contract to establish whether performance under the contract would *necessarily* and directly benefit the purported beneficiary." *Hayton Farms Inc. v. Pro-Fac Corp. Inc.*, No. C10-520-RSM, 2010 WL 5174349, at *7 (W.D. Wash. Dec. 14, 2010) (emphasis in original) (citing *Lonsdale v. Chesterfield*, 662 P.2d 385, 390 (Wash. 1983)).

---

[1] The Court declines to address First Transit's argument concerning the concepts of "vertical" and "horizontal" employment as discussed in a federal Department of Labor administrative guideline. Dkt. # 26 (citing Dept. of Labor, Administrator's Interpretation No. 2016-1 (Jan. 20, 2016)). While the Washington State Supreme Court often looks to federal law for interpreting its employment statutes, it has not, to this Court's knowledge, done so with respect to concepts of vertical or horizontal employment.

ORDER – 9

Plaintiffs contend that their status as third-party beneficiaries is evident from the plain language of the contract between First Transit and King County Metro. They rely on the following provision:

> The C.C.-Contractor [First Transit] shall provide dispatch coverage for all hours of transportation service operation. Additionally, the C.C.-Contractor [First Transit] shall provide non-reservation coverage from 5:00 p.m. to 8:00 a. m. to process ride inquires, comments, and cancellations, to call riders with changes, to optimize service on day of service, and to ***ensure that its drivers receive breaks and lunches***.

Dkt. # 27-2 at 90 (Section 6.5.D.1) (emphasis added). In First Transit's view, it employed schedulers, not drivers, so the term "its drivers" cannot be construed as having imposed a contractual obligation to provide rest breaks to Plaintiffs, who are employed by Transdev. Dkt. # 26 at 20. In addition to the above provision, Plaintiffs rely on a provision that required First Transit to cooperate with Transdev:

> The C.C.-Contractor [First Transit] shall work with S.P.-Contractors [Transdev] to ***develop a plan to ensure driver breaks and lunches that shall have the least impact on the provision of service***. This plan shall conform to applicable law.

*Id.* (Section 6.5.D.12) (emphasis added). According to First Transit, this provision does not directly benefit Plaintiffs because it obligated First Transit only to minimize the impact that rest breaks and lunches would have on the ridership. Dkt. # 26 at 21.

Having reviewed the contract and the parties' contentions, the Court holds that Plaintiffs are third-party beneficiaries of First Transit's contract with King County Metro. As is evident from the above provisions, the contract obligated First Transit to furnish scheduling services to King County Metro in a manner that ensured Plaintiffs would receive rest and lunch breaks. Plaintiffs may not have been employed by First Transit, but when it came to breaks, they were at First Transit's mercy. Their employer, Transdev, retained no control over driver scheduling—that responsibility fell to First Transit. Thus, unless First Transit fulfilled its contractual obligations in a manner that ensured breaks, Plaintiffs would go tired and hungry. First Transit's performance under

ORDER – 10

the contract necessarily and directly benefitted Plaintiffs such that they are third-party beneficiaries. *Warner v. Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. Ct. App. 2005) ("The test of intent is an objective one: Whether performance under the contract necessarily and directly benefits the third party.").

### B. First Transit's Motion to Dismiss Transdev's Cross-Claim

First Transit moves to dismiss Transdev's claims. Transdev's claims both allege breach of contract, but are premised on different theories: (1) contractual privity between Transdev and First Transit; and (2) Transdev's status as a third-party beneficiary to the contract between First Transit and King County Metro.

#### i. Claim Based on Contractual Privity

Transdev and First Transit are not in contractual privity. Two separate contracts are at issue in this dispute: one is between King County Metro and Transdev (Dkt. # 27-1); the other is between King County Metro and First Transit (Dkt. # 27-2). Transdev contends that these contracts must be read as one, but fails to reconcile this contention with the Washington State Supreme Court's holding in *Am. Pipe & Const. Co. v. Harbor Const. Co.*, 317 P.2d 521 (Wash. 1957).

In *American Pipe*, the City of Anacortes, Washington sought to build a new water supply system. *Id.* at 523. To do so, it contracted with a pipe supplier and, separately, with a pipe installation contractor. *Id.* Litigation ensued and the installation contractor sought damages from the pipe supplier for failing to perform its contract with the City. *Id.* On appeal, the installation contractor urged that the separate contracts should be read as one. *Id.* at 524. The Washington State Supreme Court disagreed. Although the contract between the City and the pipe supplier may have been useful to interpret the contract between the City and the installation contractor, "[t]he rule is one of *interpretation* only and we do not think that it can be extended to create a contract where none was intended." *Id.* at 525 (emphasis in original). As the court explained, the contractor was "not relying upon the contract between the city and the pipe supplier as an aid to the interpretation of its contract with the city." *Id.* at 525-26. Instead, "the true

ORDER – 11

nature of the installation contractor's contention is that it is entitled to damages . . . as a third-party beneficiary." *Id.* at 526.

As was the case in *American Pipe*, the similar purpose and subject matter of the two contracts at issue in this dispute are not enough for the Court to construe them as one and the same. Applying this principle, the Court **GRANTS in part** First Transit's motion and **DISMISSES** Transdev's cross-claim alleging breach of contract under a theory of contractual privity.

### ii. Claim Based on Transdev's Status as a Third-Party Beneficiary

Unlike Transdev's claim of contractual privity, its claim of third-party beneficiary status has merit. As concluded above, Plaintiffs, who were employed by Transdev, are third-party beneficiaries of First Transit's contract with King County Metro. *See supra* § IV.A.iv. It follows, then, that Transdev is also a third-party beneficiary. First Transit was contractually responsible for dispatching drivers, scheduling their workdays, and ensuring time for breaks. Transdev, under its own contract (and state employment laws), was also responsible for ensuring that the drivers received rest breaks, yet it could not do so unless First Transit fulfilled its contractual responsibilities. Transdev is a third-party beneficiary of the contract between First Transit and King County Metro because First Transit's performance of that contract necessarily and directly benefitted Transdev.[2] *Warner*, 114 P.3d at 670.

### C. First Transit's Motion for Protective Order

First Transit filed a motion for protective order staying discovery pending the Court's rulings on the above motions to dismiss and modifying certain pretrial deadlines.

---

[2] First Transit contends that construing its contract in this manner violates public policy because it diminishes Transdev's incentive as an employer to provide rest breaks for its employees. For support, First Transit cites *Kilgore v. Shriners Hosps. For Children*, 360 P.3d 55, 58 (Wash. Ct. App. 2015), which stands for the proposition that an employer found liable for violating employment laws cannot seek indemnity from the employee whose misconduct caused the statutory violation. *Kilgore*, however, says nothing of an employer whose ability to comply with its employment obligations was foreclosed by a separate entity's breach of contract. The Court's holding does not implicate the policy concerns at issue in *Kilgore*.

ORDER – 12

Dkt. # 39. The Court **DENIES** that motion **as moot**. A party that wishes to raise a subsequent issue concerning discovery obligations or compliance with pretrial deadlines must do so in a motion following the issuance of this Order.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** First Transit's Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim (Dkt. # 26), **GRANTS in part** and **DENIES in part** First Transit's Motion to Dismiss Defendant Transdev's Cross-Claim for Failure to State a Claim (Dkt. # 30), and **DENIES as moot** First Transit's Motion for Protective Order Staying Discovery as to First Transit (Dkt. # 39).

DATED this 13th day of April, 2017.

*/s/ Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 13